# Milne, Brown & Co. *versus* Henry.

*Fraud in Law and Fraud in Fact, distinguished.*—*Sales of Personal Property.*—*Possession must accompany Transfer.*

1. Fraud in law differs from fraud in fact, in that when certain "*indicia*" are established, its presence is determinable, *as a matter of law by the court*, regardless of evil intent on the part of those engaged in it: whereas fraud in fact depends upon the fraudulent intent of the parties, and the facts establishing this are for the jury.

2. Where, in a sale of personal property, the possession does not follow and accompany the transfer, it is a fraud in law without regard to the intent of the parties, and is a question for the court and not for the jury.

3. W., a merchant, having failed, bought goods *on credit* as the agent of his wife, which were not at any time paid for out of her own money or estate. Afterwards, she sold the goods with the store-lease and fixtures to her brother H., a journeyman blacksmith; no money being paid by him, the only consideration being two notes of $500 each, and his guarantee that he would pay certain of her debts. No inventory was taken, the same signs on the window-blinds and house remained, with the same clerks, save one, nor was there any outward visible change of possession; but W. remained in the store, attending to the business in the same manner after the sale as before; ostensibly as the agent of H., who shortly after the alleged sale went to Texas and remained there. Part of the goods levied on by the creditors of W. were purchased by

[Milne, Browne & Co. *v.* Henry.]

him a few days before, as agent, on credit, he giving therefor a mortgage executed by himself and wife, on her separate estate.

On a feigned issue, under the Sheriff's Interpleader Act, to try the right to the property levied on, it was *held:*

1. That as the property first purchased was not paid for by the wife out of her own money or estate, she had no title to the goods, but the ownership was in her husband:

2. That, therefore, the sale or pretended sale to H. was, under the evidence, a case of retained possession without open and visible change, and for that reason, fraudulent and void—a fraud in law, even if there had been a formal sale, with honesty of intent, and payment of the purchase-money; and, that the court should so have instructed the jury in answer to plaintiff's point, leaving to the jury the facts as to the possession, if disputed.

ERROR to the District Court of *Allegheny county.*

This was a feigned issue, under the Sheriff's Interpleader Act, to try the ownership of certain personal property, in a store-room on the corner of South Common and Federal street, in Allegheny city, and in a store-room two doors above the corner, lately occupied by Jacob Burgaff, which had been levied on by the sheriff of Allegheny county as the property of N. Whiting. The parties to the issue were Nelson Henry, the claimant, and David Milne, David L. Browne & Co., Waln, Leaming & Co., The Dwight Manufacturing Company, Boot Cotton Mills, Sleeper & Fenner, and The Great Falls Manufacturing Company, execution-creditors of N. Whiting.

The material facts of the case were as follows:—

In 1857 Nelson Whiting was a partner of A. A. Mason, doing business as A. A. Mason & Co., which firm failed in the fall of that year for a very large amount.

In 1859 Mr. Whiting, in the name of his wife, who was the owner of valuable real estate in Pittsburgh, commenced the dry goods business in Market street, selling at wholesale and retail, assisted by Mr. McCaffrey, Mr. Eclees and Mr. Beckert as clerks.

In the year 1860 the store was removed to Allegheny city, and opened on the corner of Federal street and the South Common.

On the whole length of the house fronting on the Common were painted, in large letters, "Whiting's Wholesale and Retail Dry Goods House."

Above the door, on Federal street, was "N. Whiting," and in the period after the name were the letters "Atty.," so small as not to be readily noticed. On the window-blinds below, and fronting on Federal street, were painted in large letters, "N. Whiting, Dry Goods." Above the window, fronting on the Common, was the word "Whiting's."

In this manner the business was conducted until September 14th 1860. At this time Mrs. Whiting, by her husband as agent, was indebted in the sum of $12,000 or $14,000 for the stock on

4 WR.—23

hand ; nor was there any evidence that Mrs. Whiting had ever invested any of her separate estate in the purchase of these goods.   On the 14th of September 1860, she executed a bill of sale for the stock on hand, fixtures, book accounts, and lease, amounting to $16,378.48, to her brother, Nelson Henry, a journeyman blacksmith, about 26 years of age, earning $8 a week at his trade, whose interest in his father's real estate he had sold to Mrs. Whiting in 1857 for $1500, and whose whole estate consisted of $1200, which was at that time loaned away.   No inventory was taken when the sale was made.   On the execution of this bill of sale by Mrs. Whiting, Nelson Henry delivered to her the following instrument of writing :—

"In consideration of Helena Whiting, with consent and acquiescence of her husband, Nathan Whiting, selling to me all the stock, fixtures, lease, &c., of the store on Federal street, Allegheny city, up to this date conducted under the name of Helena Whiting, as also the book accounts, I do hereby agree to pay the schedule of liabilities hereto attached, say $14,633.31, and also the further sum of $1000 to said Helena Whiting.   Witness my hand and seal this 14th day of September, A. D. 1860.

"NELSON HENRY.   [L. S.]"

To this was appended a schedule of liabilities, amounting to $14,633.31, leaving a balance of $1745.17, on account of which Nelson Henry gave two promissory notes, dated September 12th 1861, for $500 each, payable in eight and twelve months, but no money passed at the time of the purchase.   On the same day the following notice was inserted in the Pittsburgh Daily Dispatch, and appeared in the issues of September 15th, 17th, and 18th, 1860 :—

"NOTICE.—Helena Whiting has this day sold out the stock of dry goods, lease, and fixtures of the store, corner of South Common and Federal street, Allegheny, to Nelson Henry.   The business will be carried on hereafter by N. Whiting, Agent.

"Allegheny City, September 12th, 1860."

At the time of the sale Nelson Henry, by letter of attorney, employed Nelson Whiting as his salesman and general agent, to conduct the business, at an annual salary of $800.

The books were continued, as before, after balance struck thereon, the name of Nelson Henry appearing in them only once, where he was charged with some articles purchased by him.   The signs above mentioned were unchanged.   Nelson Henry was not engaged in the store after the alleged transfer in any way, nor did he visit it more than two or three times.

[Milne, Browne & Co. *v.* Henry.]

Between the 14th of September 1861 and the sheriff's levy, the proceeds of the store had paid off all the scheduled liabilities above mentioned, except about $1000; and during this time new stock, to the amount of $8000, had been purchased.

Three days before the levy, N. Whiting, as agent for N. Henry, bought a stock of goods of Hood, Bonbright & Co., then in the storeroom of Jacob Burgaff, with the intention, as he testified, of adding them to the stock in the store on the corner of Federal street and South Common, and gave his notes for the purchase-money, which were secured by a mortgage on the property of Mrs. Whiting, in which Nelson Whiting joined. These goods remained in the store of Burgaff at the time of the levy.

To April Term 1861 executions were taken out against Nelson Whiting by the parties above mentioned, under which the property in both the stores was levied on. Mr. Nelson Henry thereupon asserted his right to the property as owner, and the preliminary proceedings required by the Sheriff's Interpleader Act having been complied with, an issue was made up as above stated, the declaration averring that the goods were the property of the plaintiff Nelson Henry, and the plea setting forth that at the time of the levy the right of property was in Nelson Whiting.

On the trial the following points were submitted by the parties, on which the instruction of the court was requested.

The defendants' counsel requested the court to charge :—

1. That the goods in possession of N. Whiting, agent of his wife, at the time of the sale to N. Henry, are presumed to be the property of N. Whiting, unless the plaintiff proves that the goods were purchased with the separate funds of Mrs. Whiting.

2. That if they believe the goods levied upon were, at the time of the levy, in possession of N. Whiting, the law conclusively presumes that they belonged to him, in the absence of clear and satisfactory evidence to the contrary.

3. That if they should find that the stock of goods alleged to have been sold to N. Henry on September 14th 1860, was the property of N. Whiting, and that said N. Henry did not, within a reasonable time after the purchase, take and continue in the possession of said stock of goods, and that the business was conducted by N. Whiting and his clerks in the same manner after the sale as before, and that the signs painted on the window-blinds and house remained the same after the sale as before, and that there was no open or manifest change of possession; that in such case, the sale to N. Henry (although he had honestly paid for the goods), was fraudulent and void in law as to the creditors of N. Whiting, and the plaintiff cannot recover.

[Milne, Browne & Co. *v.* Henry.]

The plaintiff requested the court to charge :—1. That under the circumstances disclosed by the evidence, the sale to the plaintiff, on September 14th 1860, was not fraudulent in law.

2. Should the jury believe from the evidence, that at the time of the sale, in September 1860, of the stock of dry goods by Helena Whiting, with the consent of her husband, to Nelson Henry, said goods were wholly unpaid for, and that the intention of the parties to the sale was to secure the creditors who had furnished the goods to Mrs. Whiting on credit—such intention would not invalidate the sale.

The court affirmed the plaintiff's points, as also the first and second points of defendant, but declined answering defendant's third point as matter of law, submitting it as a question of fact for the jury, and charged that there was "but one question of fact for the determination of the jury, under the instructions of the court, in answer to the points submitted by the counsel on both sides, viz. : Was the sale of the stock of goods to the plaintiff, on the 14th September 1860, a *bonâ fide* sale, or was it fraudulent ? Did the plaintiff purchase the stock of goods in good faith, and did he afterwards carry on the store for his own benefit, or was the sale a mere cover to enable Whiting to carry on the store for his own benefit in the name of Henry ? What was the transaction, and who was the real party in interest ? Was Whiting the real agent of Henry, or was he the owner of the goods ? If the sale was made in good faith, and if the store was carried on by Henry for his own benefit, and he was the real party in interest, the goods were not liable to be seized by the creditors of Whiting, and the verdict of the jury should be for the plaintiff. But if the sale was a sham and cover to enable Whiting to carry on the business for his own use and benefit, then the goods were liable to be seized by his creditors, and the jury should find for the defendants. The jury will determine from all the evidence under the principles laid down by the court, in answer to the points submitted, what was the real nature of the transaction, and find their verdict accordingly."

Under these instructions there was a verdict and judgment for plaintiff ; whereupon the defendants sued out this writ, and assigned as cause for reversal here that the court erred in refusing to instruct the jury as requested in their third point, and in affirming the points submitted by the plaintiff.

*Reed & Slagle,* for plaintiff in error.—Questions of legal fraud are for the court exclusively, and where there are no disputed facts, the court should charge that they do or do not amount to fraud. Where possession does not accompany or within reason-

[Milne, Browne & Co. v. Henry.]

able time follow the transfer of personal property, it is fraud *per se*, regardless of the intent of the parties: Dornick *v.* Reichenbach, 10 S. & R. 90; Young *v.* McClure, 2 W. & S. 151; Babb *v.* Clemson, 10 S. & R. 428; Chase *v.* Ralston, 6 Casey 541; Carpenter *v.* Mayer, 5 Watts 485; Streeper *v.* Eckert, 2 Wh. 307.

We did not ask the court to assume the truth of the facts proven, but to instruct the jury that if they believe a certain state of facts proven, they must find for defendants. This was the duty of the court: Cadbury *v.* Nolen, 5 Barr 320. The undisputed facts of this case, embodied in defendants' third point, entitled them to the instruction prayed for.

*Marshall & Brown*, with whom were *Hamilton & Acheson.*— The court below fairly submitted to the jury, as a question of fact, whether the sale to Nelson Henry, on the 14th of September 1860, was *bonâ fide* or fraudulent. The jury found that it was *bonâ fide*, and therefore free from *actual* fraud.

In not taking the case from the jury, as requested by the defendants, there was no error: Hugus *v.* Robinson, 12 Harris 9, was a case precisely like this. See also Avery *v.* Street, 6 Watts 247; McVicker *v.* May, 3 Barr 224; Forsyth *v.* Mathews, 2 Harris 100; Chase *v.* Ralston, 6 Casey 539. These goods never were owned or claimed by N. Whiting. They were the property of his wife, by whom they were sold to Nelson Henry. Whiting's ownership could not be inferred from anything about the premises. An ostensible change of possession was, therefore, unnecessary. In this case the question of legal or constructive fraud could not arise: See Linton *v.* Butz, 1 Harris 89. Full notice was given as to who was the owner after the 14th of September 1860, and, in addition to this, between the sale and the levy, the stock was almost entirely renewed.

The opinion of the court was delivered, October 31st 1861, by

THOMPSON, J.—The difference between fraud in law and fraud in fact, is very marked, and not more so than is the method of dealing with it. Certain *indicia* being established, or capable of being so, its presence is determinable as a matter of law by the court, regardless of any evil intent on part of the agents engaged in it. But fraud in fact, rests mainly upon the fraudulent intent, and the facts establishing this are necessarily for the jury, and must be clearly found.

The plaintiffs in error here, claim that the facts in this case, clearly establish a case of fraud in law against the defendant, and submitted a point to the court to that effect. After looking carefully into the evidence, we agree that the facts fully justified the point and the complaint now made that it was not affirmed.

[Milne, Browne & Co. *v.* Henry.]

There was not even a spark of competent evidence to establish property in Nelson Whiting's wife in the store. Nothing to persuade even, that it was an acquisition from her own money or property. We have said so often lately, that this is indispensable, that we need not now cite authority for it. This left the ownership in Whiting, the husband. There was a sale, or pretended sale, of it by her to Henry, in September 1860. No money was paid; no inventory of the goods taken, and no change of possession. It remained in all respects after as before the alleged sale. Henry took no part in the store; was never there; Whiting was. The same clerks, excepting one, were retained, and the same sign kept up. Everything remained in *statu quo*. Even if there had been a sale in solemn form, it was a case of retained possession, without visible change, and for that reason was fraudulent in law and void. The court should have answered as prayed, and so declared it, leaving the facts, if there had been any dispute about the possession, to the jury. Under such circumstances as those claimed to be true in the point, no honesty of intent, accompanied even by payment of the purchase-money, would have relieved the case from being condemned as a case of fraud in law.

In Young *v.* McClure, 2 W. & S. 147, this Court said, following established doctrine and developing nothing new, "The question, however, is not in these cases (of retained possession by a vendor), whether under all the circumstances the transfer is in good faith and without design to cover the property, or to delay or hinder creditors. It is an *inflexible* rule which makes it fraud *per se*, if the possession does not follow as well as accompany the transfer: Clow *v.* Woods, 5 S. & R. 275; Babb *v.* Clemson, 10 S. & R. 419; Carpenter *v.* Moyer, 5 Watts 485; Hamilton *v.* Russell, 1 Cranch 309. If it was a fraud in law, without regard to the intent of the parties, it becomes a question for the court and not for the jury to decide: Dornick *v.* Reichenbach, 10 S. & R. 84; Carpenter *v.* Mayer, 5 Watts 483. There being no evidence to show that the possession accompanied and followed the transfer, the plaintiff failed in making out his case, and the court, on the evidence, ought so to have instructed the jury:" see also 6 Casey 639; 6 Harris 113; and particularly, Twyne's Case, 1 Smith's Lead. Cas. 47, 5th ed., Am. note; where this whole subject is fully and learnedly examined, and the law stated in accordance with the principles here declared. We think the learned judge erred in the manner indicated, and the judgment must be reversed.

Judgment reversed, and *venire de novo* awarded.