# Miller *versus* Garman.

1. A vendee of the stock of a hotel, took possession and controlled its management for eight days, the vendor with his family remaining in the house and acting under the direction of the vendee; there was no apparent change in the conduct of the business. This possession in the vendee was concurrent, and therefore fraudulent and void as against the vendor's creditors.

2. After the eight days the vendee removed, and surrendered the possession to the vendor. If the possession had been exclusive in the vendee, this would have rendered it void.

3. In order to render a sale of goods valid against creditors, the change of possession must be both actual and continued.

4. Billingsley *v.* White, 9 P. F. Smith 464; and McKibbin *v.* Kline, 14 Id. 352, distinguished.

May 15th 1871. Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the court of Common Pleas of *Dauphin county*: No. 50, to May Term 1871.

This was an issue under the Sheriff's Interpleader Act, ordered September 6th 1870, in which Edward Miller was claimant and plaintiff, and Jonas Garman defendant.

B. F. Miller and W. W. Foster, as partners, kept a hotel known as the " Valley House," in Dauphin county, and were the owners of the furniture and stock of liquors, &c., in it. On the 1st of July 1870, they sold their furniture, &c., to Edward Miller the plaintiff

[Miller v. Garman.]

here, and gave him a bill of sale. On the 2d of July, Garman, the defendant, holding judgments against B. F. Miller, issued executions against him and on the 13th of July, the sheriff levied at the hotel on the furniture, &c., sold to Edward Miller, who claimed to be the owner of the property; and this issue was framed to try the ownership of the goods levied on.

The evidence was that after the sale, Edward Miller stayed in the house and had possession for about eight days, Foster remaining there for a short time till he could get another house. B. F. Miller still continued in the house; Edward Miller did not move his family in; he leased to B. F. Miller on the 8th of July. Whilst Edward was there B. F. Miller acted under his control, no notice was given to the boarders of the change; Edward locked up the house at night; he told transient guests that he was proprietor. On the 15th of July 1870, a notice dated July 1st, appeared in a newspaper signed by Edward, that he had purchased the furniture and fixtures of the Valley House.

After Edward left at the end of the eight days, B. F. Miller took charge of the house, was there at the time of the levy and continued there. There was no change in the appearance of things after the sale. There was evidence that Garman, on the 1st of July, knew of the sale to Edward.

The court (Pearson, P. J.), after recapitulating the facts and stating the principles of law, charged that on the whole evidence the sale to Edward Miller was fraudulent and void in law, however honest in fact; and directed a verdict for the defendant.

The plaintiff took out a writ of error and in seven specifications assigned the charge for error.

*J. C. McAlarny*, for plaintiff in error, cited Stelwagon v. Jefferis, 8 Wright 412; Hugus v. Robinson, 12 Harris 9; Dunlap v. Bournonville, 2 Casey 72; Barr v. Reitz, 3 P. F. Smith 256; Billingsley v. White, 9 Id. 464; Forsyth v. Matthews, 2 Harris 100; McVicker v. May, 3 Barr 224.

*J. W. Simonton*, for defendant in error, cited Braun v. Keller, 7 Wright 106; Young v. McClure, 2 W. & S. 150; Milne v. Henry, 4 Wright 352.

The opinion of the court was delivered, October 9th 1871, by

WILLIAMS, J.—There are seven assignments of error in this case, but the sole question presented by the record is, Whether the sale was fraudulent and void in law because there was no such actual and continued change of possession as is requisite in order to render a sale valid as against the vendor's creditors?

This case is unlike the case of Billingsley v. White, 9 P. F. Smith 464, and the cases of McKibbin v. Martin and McKibbin

*v.* Kline, 14 Id. 352. In the first, the evidence showed that the vendee took possession of the store immediately after the sale, and that he conducted the business in his own name and on his own account for ten months before the sheriff's levy; that notice of the sale and change of possession was given by advertisements put up on the door of the store and in the town or borough; that these advertisements were seen and read, and that it was well known in the community, and by the vendor's customers who dealt with the vendee after the sale, that he was carrying on the business in his own name and apparently on his own account. The only badge of fraud in the case was the fact that Billingsley, one of the vendors, acted as the vendee's agent or clerk in carrying on the business after the sale, and that Patterson, the other vendor, who was farming a field in the neighborhood, sold a few goods in the store. But there was no evidence that either of them ever bought or sold any goods in the name of their firm or on their own account, or that either had any connection with the vendee's business except as his agent or employee. If the sale was not fraudulent in fact, we held, for the reasons given in the opinion, that the evidence did not show such a case of retained possession, or a possession so doubtful or ambiguous, as to render the sale fraudulent in law. In the latter cases—in which the sale was of the furniture and fixtures, lease and good-will of the Merchants' Hotel in Philadelphia—notice of the sale and that the business would thereafter be carried on by the vendee was given by advertisements in two of the newspapers published in the city. The vendee took charge of the business, received the income and paid the bills when necessary; had a new set of books opened, bills printed, rendered and receipted in his name. But the vendors remained in the hotel assisting in conducting the business—one of them acting as superintendent. In view of the nature of the property it was held that the vendee was not bound to remove it, but that "it was enough if he assumed the direction and control of the property and business, and in such an open, notorious manner as usually accompanies an honest transaction. Whether all was done that ought to have been done in this instance, and whether the change of possession was real and bonâ fide—not merely colorable and deceptive, leaving the actual possession and control in the vendors—were," as said in the opinion, "questions of fact which ought to have been submitted to the jury."

But in the case before us, the possession taken by the plaintiff was not exclusive. At the most it was only concurrent and it continued but seven or eight days, and was then surrendered, when the vendor had the exclusive possession and carried on the business just as he did before the sale. It is clear that if the concurrent possession proved in this case had continued down to the date of the sheriff's levy and sale of the goods, that it must have

[Miller *v.* Garman.]

been deemed colorable and fraudulent: McKibbin *v.* Martin and the cases there cited; and if the possession for the seven or eight days succeeding the sale had been exclusive instead of concurrent, it would not have vested the title in the plaintiff because the possession was then surrendered to the vendor. Change of possession must not only be actual, but it must be continued in order to render a sale valid as against the vendor's creditors. The court below, therefore, rightly instructed the jury that "on the whole evidence the sale to Edward Miller was fraudulent and void in law. That however honest in fact, it vested no title as to the creditors of B. F. Miller, and their verdict must be in favor of the defendant in the issues."

Judgment affirmed.