## Pittsburg, Appellant, *v.* Pittsburg Railways Company.

*Street railways—Rates of fare—Municipal control—Statutes—Act of March 7, 1901, P. L. 20.*

1. The power of a city to regulate and fix fares to be charged by street passenger railway companies operating cars within its limits must be delegated by the legislature or be held not to·exist.

2. Such power is not embraced within the power to enact ordinances for the maintenance of the good government and welfare of the city and its trade, commerce and manufactures.

3. The words "to fix the rates and prices for the transportation of persons and property from one part of the city to another" with which clause XXIV, sec. 3, art. XIX, of the Act of March 7, 1901, P. L. 20, concludes, are to be read in connection with the first part of the sentence in which they occur, and, being thus construed, are restricted in their operation to the particular classes of vehicles therein mentioned, and, therefore, do not confer the power to fix and regulate the fares to be charged by street passenger railway companies.

Argued May 1, 1911. Appeal, No. 141, April T., 1911, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., July T., 1910, No. 980, for defendant on demurrer in case of City of Pittsburg v. Pittsburg Railways Company. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Appeal from judgment of alderman.

On a demurrer to plaintiff's statement FRAZER, J., filed the following opinion:

Plaintiff's claim is to recover the sum of $100, penalty provided for in an ordinance of the city of Pittsburg, approved June 17, 1910, entitled:

"An Ordinance, requiring the issue of transfers to passengers on street railway cars in the City of Pittsburg, in certain cases and upon certain conditions therein specified; providing regulations as to the use of said transfers, and prescribing penalties for violations thereof."

The first section provides: "That from and after the passage of this ordinance every passenger in any street railway passenger car operated in said city, traveling from a point within said city, having paid his fare, may demand, and upon such demand shall receive from the conductor of said car, or from some authorized agent of the company or corporation operating said car, a transfer. Said transfer shall entitle such passenger to ride to any other point within said city upon any other line of street railway operated by the company issuing the transfer which connects with, crosses, intersects, or goes within a distance of 250 feet of the line of said street railway upon which the passenger first took passage and paid his fare."

Sections 2, 3, 4, 5 and 6 relate to the use of such transfers, and sec. 7 provides a penalty for violations, of not less then $25.00 nor more than $100 to be recovered by an action before any alderman or police magistrate.

The statement alleges a violation of the provisions of the ordinance by a conductor of defendant company on June 18, 1910, in refusing a transfer to a person, who, having become a passenger and paid his fare upon one of defendant's cars at a point in the city of Pittsburg, made request for a transfer at a point within the city to another point, also within the city, which request was refused. This action was thereupon brought, before an alderman, to recover the penalty of $100 for refusal upon the part of the railway company's employee to issue a transfer in accordance with the requirements of the ordinance. Upon judgment being entered for plaintiff by the magistrate, an appeal was allowed defendant, and upon its statement of claim being filed, alleging the facts in substance above stated, defendant demurred, assigning the following reasons:

1. That the ordinance on which this action is based is invalid, illegal, unconstitutional and void.

2. That the city of Pittsburg has no power under the legislature of this state to pass any such ordinance.

3. That the said ordinance is unreasonable and shows

upon its face that it was passed without any consideration or investigation of the conditions or circumstances determining the question of reasonableness.

4. That the said ordinance cannot confer upon the city of Pittsburg the right to recover this penalty in its name or for its use.

Defendant is a corporation duly created under the laws of this commonwealth, and has since the year 1902 been operating a street passenger railway over and upon the streets of the city of Pittsburg and adjacent territory. At the time the railways company was granted a franchise to use the streets of the city of Pittsburg councils of the municipality, under à provision of the constitution, might have imposed upon the company conditions similar to those contained in the ordinance referred to: Allegheny v. Railway Co., 159 Pa. 411. Not having done so, however, the question now before us is its right to do so at this time. All corporations, municipal as well as private, are restricted to the powers conferred upon them by the statute under which they exist. "Of every municipal corporation, the statute by which it is created is its organic act. Neither the corporation nor its officers can do any act or make any contract, or incur any liability not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void:" Dillon on Municipal Corporations (4th ed.), sec. 89. In Commonwealth v. Railroad Company, 27 Pa. 339, our Supreme Court says: "If you assert that a corporation had certain privileges show us the words of the legislature conferring them. Failing in this you must give up your claim, for nothing else can possibly avail you. A doubtful charter does not exist, because whatever is doubtful is decisively certain against the corporation." This principle of law has been universally followed by both the lower and appellate courts of this commonwealth. The burden, therefore, is upon the plaintiff to show its authority for enacting the ordinance upon which this action is based. To that end we have been referred to clause 24,

of sec. 3, of art. 19, of the charter Act of 1901, P. L. 20, which is as follows:

"XXIV. To establish stands for coaches, cabs, omnibuses, carriages, wagons and other vehicles for hire, and to enforce the observance and use thereof, and to fix the rates and prices for the transportation of persons and property from one part of the city to another."

While there was existing legislation at the time of the passage of the act of 1901, relating to the power of the city to regulate vehicles, that legislation was repealed or superseded by the clause above quoted. If the ordinance is not within the purview of that clause, its provisions are void, unless within the city's general police power. In other words, is that language sufficiently broad to include street passenger railways, and especially to authorize and empower the municipality to regulate the fare to be charged by such companies, both of which the ordinance is intended to do. At the time of the passage of the act of 1901, corporations created to operate street cars were in existence throughout the commonwealth, which fact was undoubtedly known to the members of the general assembly. We might, therefore, assume, because of such knowledge, an intention on the part of the legislature to exclude such companies from the provisions of the clause quoted, by failing to either specifically name them or use language clearly indicating an intention to embrace them. It is also contended by counsel who were heard in behalf of persons claiming an interest in the controversy as citizens, that in addition to the authority contained in the act of 1901, the city has power under its general police power to enact the ordinance of June 17, 1910.

The contention of the city that the words "and other vehicles for hire," include street railway cars is not in accordance with the construction placed upon such general words by our appellate courts when used in other statutes. In all acts of assembly where general words are employed, following the enumeration of particular objects, the rule in this state is that the general words relate to the

objects specified in the legislation, and not to objects of a similar kind. A case in point is that of the Monongahela Bridge Co. v. Pittsburg & Birmingham Railway Co., 114 Pa. 478. In that case the charter of the company provided, inter alia, as follows: "For each carriage, wagon, buggy, or other wheeled vehicle of whatever description, and for each sleigh or sled, drawn by a single horse, the sum of ten cents, and for each additional horse the sum of five cents," shall be charged as toll for crossing the bridge. Subsequent to the passage of the act containing the words quoted the bridge was used by the railway company's cars, and in a proceeding to fix and determine the rates of toll to be paid by the railway company, it was claimed by the bridge company that the words "or other wheeled vehicles of whatever description" were broad enough to embrace street cars, and that the company, by reason of those words in its charter had a right to charge tolls upon them at the rate named. The Supreme Court held otherwise, and said: "We are of opinion that it was not the legislative intention to embrace railway cars in the provisions of that act, and that the designation "other wheeled vehicles of whatever description" must be restrained to the same kind or general class of vehicles as those particularized.

In Pardee's App., 100 Pa. 408, it was held that an act of assembly to secure the payment of money due employees "from any person or persons or chartered company employing clerks, miners, mechanics or laborers, either as owners, lessees, contractors or underworkers of any works, mines, manufactory or other business where clerks, miners or mechanics are employed" must be restricted to the particular classes named, and that the words "other business" did not enlarge the statute so as to include an employee of a lumber company. To the same effect is Allen's App., 81 *Pa. 302.

The question raised here has been before the courts of other states and the rule laid down by our Supreme Court followed in those states. In Old Colony Trust Co. v. Atlanta, 83 Fed. Repr. 39, the United States circuit court

for the northern district of Georgia in a case wherein the city of Atlanta by an ordinance based upon legislative authority contained in its charter "to pass all by-laws concerning . . . . carriages, wagons, carts, drays, etc., and every by-law ordinance and regulation that it may· deem proper for the peace, health, order or good government of the city," attempted to regulate the rate of fare to be charged by the Atlanta Street Railway Company and require transfers to be given passengers, the court, afterwards affirmed by the circuit court of appeals, 88 Fed. Repr. 859, held that the charter clause referred to did not confer authority to regulate the fares to be charged by street railway companies, and declared the ordinance invalid and inoperative. See also Keefe v. L. & B. Street Railway, 185 Mass. 183 (70 N. E. Repr. 37).

In the Easton v. Easton Transit Co., 17 Pa. Dist. Rep. 711, the city, by ordinance based upon a clause in the act for the government of cities of the third class, identical in language with that relied upon here by plaintiff, attempted to regulate the fares to be charged by street railway companies in that city. The court in an elaborate opinion held that the clause relied upon did not confer the authority claimed by the municipality, and declared the ordinance void. Other cases might be cited to the same effect.

Applying the rule laid down in the cases cited to this, no other conclusion can be reached than that the words "other vehicles for hire" refer and must be restricted to the general class of vehicles named in the clause of the act of 1901 above quoted, and consequently do not comprehend street railway cars. That such was the intention of the legislature seems apparent from the fact that no reference whatever to either street railway companies or their cars is made in the statute, when at the time of its enactment such companies were operating cars in all cities of the commonwealth under laws enacted by the legislature.

That the legislature has the power to regulate the rates of fare to be charged by street railway companies is clear, and that it may delegate that power to cities and other

municipal corporations is also clear. Without such delegation, however, the authority does not exist in such corporations: Allegheny v. Railway Co., 159 Pa. 411. Neither is the regulation of fares within the general police powers of municipalities, which confer upon them authority to enact ordinances for the protection of the health and safety of the public.

The cases cited and relied upon by plaintiff do not, in our opinion, apply here. In Chicago Union Traction Co. v. Chicago, 199 Ill. 484 (65 N. E. Repr. 451) the controversy was over the right of the city to require street railways to give transfers from one line to another. The court there held the requirement as to transfer tickets to be a mere incident to the power to fix a maximum rate of fare, and as "the charter of the city gives its common council power to prescribe the compensation of persons pursuing the occupation of operating street railways" that power necessarily included the right to require transfers.

In Frankford & Phila. Passenger Railway Co. v. Philadelphia, 58 Pa. 119, the question was the right of the city to require the railway company to number its cars and pay a license fee for each car, provided for by an ordinance of the city. The court held the ordinance to be valid as a police regulation, which is quite different from an ordinance fixing the rate of fares to be charged. Our impression is that an ordinance is now in force in the city of Pittsburg providing for a car license similar to that held to be valid in the case cited.

As neither clause XXIV, of sec. 3, of art. XIX, of the charter act of 1901, nor the clause conferring upon the municipality general police powers, confer upon the city of Pittsburg authority to regulate and fix fares to be charged by street passenger railway companies operating cars within its limits, the ordinance upon which plaintiff's claim in this case is based is void, and plaintiff cannot recover. The demurrer must, therefore, be sustained, and judgment entered thereon for defendant.

And now, to wit, October 13, 1910, the demurrer is sustained and judgment entered for defendant.

*Error assigned* was in sustaining demurrer to statement.

*C. Elmer Bown*, with him *Charles A. O'Brien*, for appellant.—The ordinance was valid: Frankford & Phila. Ry. Co. v. Phila., 58 Pa. 119; Chicago Union Trac. Co. v. Chicago, 199 Ill. 484 (65 N. E. Repr. 451); Fitzmartin v. Ry. Co., 99 N. Y. Supp. 765; Detroit v. Ry. Co., 95 Mich. 456 (54 N. W. Repr. 958).

*David A. Reed*, of *Reed, Smith, Shaw & Beal*, with him *Clarence Burleigh* and *W. A. Challener*, for appellee.— The act of 1901, did not apply to street railways: Monongahela Bridge Co. v. Pittsburg, etc., 478; Ry. Co., 114 Pa. 478; Com. v. Montrose Boro., 52 Pa. 391; Schroeder v. Gas & Water Co., 20 Pa. Superior Ct. 255; Old Colony Trust Co. v. Atlanta, 83 Fed. Repr. 39; Atlanta v. Old Colony Trust Co., 88 Fed. Repr. 859; Butler's App., 73 Pa. 448; Allen's App., 81 *Pa. 302; Renick v. Boyd, 99 Pa. 555; Pardee's App., 100 Pa. 408; Corry v. Corry Chair Co., 18 Pa. Superior Ct. 271; Bucher v. Com., 103 Pa. 528.

PER CURIAM, July 13, 1911:

The decision of the common pleas that the ordinance in question is void, in which we all concur, involves these conclusions: first, that the power of a city to regulate and fix fares to be charged by street passenger railway companies operating cars within its limits, must be delegated by the legislature or be held not to exist; second, that such power is not embraced within the power to enact ordinances for the maintenance of the good government and welfare of the city and its trade, commerce and manufactures; and, third, that the words "to fix the rates and prices for the transportation of persons and property from one part of the city to another," with which clause XXIV, sec. 3, art. XIX, of the Act of March 7, 1901, P. L. 20,

concludes, are to be read in connection with the first part of the sentence in which they occur, and, being thus construed, are restricted in their operation to the particular classes of vehicles therein mentioned, and, therefore, do not confer the power to fix and regulate the fares to be charged by street passenger railway companies. The only one of these conclusions that is seriously disputed is the last, but we think it is well supported by the reasoning of the opinion of Judge FRAZER and the established rules of construction therein referred to. As pointed out in his opinion, it is in entire harmony with the cases which hold that a municipality, in granting to a street railway company the privilege of using streets, may impose reasonable conditions under which the right may be enjoyed, e. g., as to the rate of fares to be charged. This case does not involve the principle upon which such cases rest. Nor do we deem it necessary to discuss or express an opinion upon the other objections urged by appellee's counsel against the validity of the ordinance. We rest our decision upon the grounds taken by the common pleas, as expressed in its opinion.

The judgment is affirmed.