## Maynard, Appellant, *v.* Shaw.

*Fraud upon creditors — Chattel mortgages — Possession by mortgagor—Death of mortgagor—Decedent's debts—Lien—Equity —Demurrer.*

1. While a chattel mortgage is valid between the parties thereto, as to the creditors of the mortgagor or as to any purchaser from him for value and without notice, it is worthless if the mortgagor continues to hold possession of the chattel mortgaged. The fact that the mortgage may be recorded, does not except it from the general rule, such an instrument not being within the recording acts.

2. A bill in equity alleged that plaintiff was the payee of the note of a decedent, that such decedent had mortgaged to plaintiff certain chattels situated on land owned by a third person, and occupied by the maker of the note under a lease. The mortgage was recorded, but the mortgagor retained possession of the mortgaged property until his death. The bill alleged that decedent died in debt, that certain of his creditors claimed that title to the chattels was vested in the estate subject to their claims and that the chattels were in the possession of decedent's wife and prayed that the possession thereof be delivered to plaintiff. *Held,* on demurrer, that the court did not err in dismissing the bill.

Argued May 5, 1914.  Appeal, No. 225, Jan. T., 1913, by plaintiff, from decree of C. P. No. 4, Philadelphia Co., March T., 1913, No. 4544, in equity, sustaining demurrer and dismissing bill in equity in case of Charles S. Maynard v. Annie F. Shaw, executrix of Lorenzo D. Shaw, deceased, and Alice M. Bradley.  Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ.  Affirmed.

Bill in equity to recover chattels attached to real estate.

The facts appear in the following opinion of AUDENRIED, J.; sur defendant's demurrer to the bill.

Stated briefly the substance of the plaintiff's bill is as follows:

The plaintiff is the holder of a note given to him by Shaw in the year 1909 for $5,000.  This note fell due December 2, 1910, and is still unpaid.  To secure its payment Shaw gave him on December 22, 1909, a mortgage of certain chattels.  These consisted of a Ferris wheel, the machinery used in its operation and the buildings in which the latter is erected.  The mortgaged chattels were when the mortgage was made situated on land then owned by one McGill.  There they still remain.  Shaw occupied that land under a lease.  The plaintiff's mortgage did not cover Shaw's leasehold interest in the real estate on which the chattels that it embraced were located.  The mortgage was recorded; but Shaw retained possession of the mortgaged property.  Besides his lease thereof, Shaw held an option to purchase McGill's land, and, under this option, secured a conveyance of it to his wife on July 11, 1912.  It was paid for with his money and in reality became his.  Title to it was taken in his wife's name in order to protect it from his creditors.  It does not appear that Mrs. Shaw took possession of the property or that Shaw ceased to occupy it before his death.  He died August 3, 1912.  His will was proved in the District of Columbia, and there

letters testamentary were granted to his widow. No one has been appointed in Pennsylvania to administer his property here. At the time when the land above referred to was conveyed to Mrs. Shaw she and her husband joined in giving a mortgage to Mrs. Bradley to secure thereon the payment of the sum of $1,500. Both Mrs. Shaw and Mrs. Bradley had actual notice of the mortgage given by Shaw to the plaintiff, but, since Shaw's death, his widow has claimed to be the owner of the above mentioned Ferris wheel and its appurtenances, on the ground that they passed to her under McGill's deed as part of the real estate thereby conveyed, and, on the same ground, Mrs. Bradley claims that they are subject to the lien of her mortgage. Shaw died in debt; and the claims of his creditors have not yet been satisfied.

The plaintiff's prayers for relief are as follows:

1. That he be decreed to be the exclusive owner of the Ferris wheel above mentioned, with its appurtenances.

2. That Mrs. Shaw be required to deliver up possession thereof to him.

3. That the defendants be restrained from selling, removing or injuring the same.

4. That Mrs. Shaw make discovery as to who is the real owner of the land conveyed to her by McGill.

5. That Mrs. Shaw be enjoined from selling or mortgaging that land and the wheel, etc., now located on it.

6. That Mrs. Bradley be restrained from assigning her mortgage in such wise as to pass any right against said wheel, etc.

7. That the defendants be restrained from preventing the plaintiff from taking possession of the wheel, etc., aforesaid.

8. That Mrs. Shaw be ordered to account for all profits received from the operation of said wheel.

9. That a receiver be appointed to hold and operate the wheel pendente lite.

10. Further relief.

It is obvious that the principal purpose that the plaintiff had in view when he filed his bill was to obtain possession of the property covered by what has been referred to above as his mortgage but which he styles his bill of sale. His prayers for discovery and for the appointment of a receiver for the property that he claims are merely ancillary to his prayer for the delivery of that property to him. They stand or fall together.

His demand for an accounting by Mrs. Shaw is based on the proposition that he became the owner of the Ferris wheel and its appurtenances under the instrument referred to in the second paragraph of his bill. It is his theory that this so-called bill of sale vested in him the title to the wheel as against Shaw; that since Mrs. Shaw had notice of the bill of sale and moreover gave no consideration for the wheel his title to it is good as against her; and that she, therefore, holds it for him as trustee and is bound to account to him for her dealings with it. In our opinion, however, the plaintiff became merely a mortgagee of the wheel. By the bill of sale that Shaw signed this was, it is true, conveyed to him; but by the endorsement on that paper, it is plainly set forth that the purpose of the conveyance was merely to serve as security for the payment of Shaw's note to the plaintiff, and that, if the note was paid by Shaw, the bill of sale was to be null and void. Nothing could more perfectly answer the definition of a mortgage. The plaintiff's only right against Shaw, was to be paid the amount of his note, with interest. Neither from Shaw, nor from anyone claiming under him, had he the right to an accounting for the profits made in operating the mortgaged property. A mortgagor (and hence one who has succeeded to his interest), suffered to remain in possession, is not accountable to the mortgagee for rents and profits, even for a period after condition broken: Talbot's App., 2 Walk. 67.

Under the view that we hold as to the standing of the

plaintiff in this matter, it is unnecessary to discuss the question whether the claim that he advances is not one for the assertion of which he would have adequate means at law without resorting to equity.

As indicated above, the writing under which the plaintiff claims title to the Ferris wheel, etc., described in his bill was but a mortgage. The property covered by it never came into his possession, but was retained by Shaw until his death. While a chattel mortgage is valid between the parties thereto, as to the creditors of the mortgagor or as to any purchasing from him for value and without notice it is worthless if the mortgagor continues to hold possession of the chattels mortgaged; Welsh v. Bekey, 1 Penrose and Watts 57; Coble v. Nonemaker, 78 Pa. 501. The fact that the mortgage in this case happened to be recorded does not except it from the general rule; such an instrument not being within the recording acts. It is urged that Mrs. Shaw and Mrs. Bradley both had actual notice of its existence, and that the former is a mere volunteer who gave nothing for the property. It may be conceded, we think, that if this were true and if those parties alone were to be reckoned with the plaintiff might maintain his claim to the Ferris wheel and its appurtenances successfully; but the bill asserts that Shaw died in debt and that certain of his creditors claimed that the title to the property just mentioned is vested in his estate and subject to their claims. By the death of Shaw his personal estate in possession passed into the custody of the law for administration. The mortgage that he gave to the plaintiff became, on his death, void as to his creditors, because the plaintiff suffered him to retain possession of the chattels that it embraced. The law took hold of what it found in his possession for the benefit of all his creditors. The plaintiff must await the due course of administration. He has no right to undertake to administer any part of the estate of the deceased for the satisfaction of his own debt. Even if the assets of the estate outside of the

chattels covered by his mortgage would suffice to pay the other creditors, it makes no difference. That question is to be determined only by the Orphans' Court: Kater v. Steinruck, 40 Pa. 501.

On the facts set forth in the bill the right to the possession of the Ferris wheel and other personal property therein mentioned is not vested in the plaintiff. It is true that as one of Shaw's creditors he is interested in seeing these assets properly administered; but that gives him no right to maintain such a bill as that before us. If Mrs. Shaw had taken out letters testamentary in this State and had failed to account for the property that has been referred to, the plaintiff's remedy would normally lie in asking the Orphans' Court to remove her from her office and appoint some other person to assert against her the rights of the estate; but she is a foreign executrix and the Orphans' Court has no control over her. As a foreign executrix, moreover, she has no right to meddle with the assets of the estate that are in this jurisdiction. The proper course to be pursued in this matter by the plaintiff and the other creditors of Shaw is to procure the issue of letters of administration cum testaments annexed on Shaw's estate. The administrator so appointed may then resort to whatever proceedings may be appropriate and necessary to get into his hands such assets as Shaw's creditors may be entitled to have applied to the payment of their claims.

The defendant demurred to the bill. The court sustained the demurrer and dismissed the bill. Plaintiff appealed.

*Error assigned* was the decree of the court.

*Henry B. Hodge,* with him *T. Truxton Hare* and *Paul Reilly,* for appellant.

*Robert F. Bonner,* with him *Utley E. Crane,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, July 1, 1914:

The opinion of the learned chancellor properly disposes of the case, and the decree must be affirmed. The case was heard on the bill and demurrer thereto. It is conceded by the learned counsel for the appellant that if Shaw died in possession of the personal property in controversy it passed into the custody of the law for administration for the benefit of all his creditors, and that the appellant has no right to the possession of the property which must be administered by Shaw's legal representatives. That Shaw did die in possession of the mortgaged personal property is shown by the summary of the bill given by the learned trial judge as follows: "The mortgaged chattels were when the mortgage was made situated on land then owned by one McGill. There they still remain. Shaw occupied that land under a lease. The plaintiff's mortgage did not cover Shaw's leasehold interest in the real estate on which the chattels that it embraced were located. The mortgage was recorded; but Shaw retained possession of the mortgaged property. Besides his lease thereof, Shaw held an option to purchase McGill's land, and, under this option, secured a conveyance of it to his wife on July 11, 1912. It was paid for with his money and in reality became his. Title to it was taken in his wife's name in order to protect it from his creditors. It does not appear that Mrs. Shaw took possession of the property or that Shaw ceased to occupy it before his death. He died August 3, 1912."

The decree is affirmed.