## Real Estate-Land Title and Trust Company v. Bankers Trust Company of Philadelphia et al.

*Saul, Ewing, Remick & Saul,* for plaintiff in interpleader.

*Sundheim, Folz & Sundheim,* for defendants in interpleader.

GLASS, J., June 16, 1931.—This is a feigned issue under the Sheriff's Interpleader Act to determine the title to furniture and other articles of personal property seized under and by virtue of a writ of fieri facias and found in the possession of the Fairfield Apartments Corporation, southeast corner of Fifty-third Street and Wynnefield Avenue, in the City of Philadelphia. The parties to the issue are the Real Estate-Land Title and Trust Company, claimant, and the Bankers Trust Company of Philadelphia, execution creditor of the Fairfield Apartments Corporation. The case was tried by a judge without a jury, who made a finding for the plaintiff in execution (defendant in interpleader) in the sum of $2279.83, the amount agreed upon in the event of a finding for the plaintiff in execution. We have before us motions for a new trial and for judgment for the claimant *non obstante veredicto.*

The following testimony was produced at the trial: One S. Louis Baron, being the registered owner of premises known as the Fairfield Apartments, an apartment house located at Fifty-third Street and Wynnefield Avenue, in the City of Philadelphia, on June 15, 1926, executed and delivered his mortgage on the said premises in the sum of $200,000 to the Land Title and Trust Company (which later by merger became the Real Estate-Land Title and Trust Company), the claimant in this case, which said mortgage contained the following provision: "Together with all machinery, including engines, boilers, dynamos, elevators, refrigerators, incinerators, steam and electric fixtures and appliances and all fixtures and other property generally now or

which may hereafter be placed in or about said premises and appurtenant thereto, or used in connection therewith for the operation of the building as an apartment house." On the same day Baron conveyed the premises aforesaid to one Jules S. Elkish. On November 6, 1927, the said Jules S. Elkish conveyed the said premises to the Fairfield Apartments Corporation, subject to the aforesaid mortgage.

On January 24, 1928, the Fairfield Apartments Corporation borrowed the sum of $3000 from the Bankers Trust Company of Philadelphia, the plaintiff in execution (defendant in interpleader), and as security for the loan executed and delivered to it certain promissory notes. The said indebtedness was reduced by payments to $2025.94, which, together with interest at the time of entry of judgment, amounted to $2199.24.

On March 20, 1930, the Real Estate-Land Title and Trust Company gave fifteen days' written notice to the Fairfield Apartments Corporation and to the mortgagor, S. Louis Baron, that if default in payment of the principal, which was due on June 15, 1929, and in the payment of the interest, which was due December 15, 1929, was not remedied, it, as trustee, would take possession of the mortgaged property. On or about April 10, 1930, it appointed William H. W. Quick and Brother, Inc., as its rental agent, who, on April 12, 1930, placed a sign on the premises which read: "Fairfield Apartments. Suites of four and five rooms. Apply Janitor, or William H. W. Quick and Brother, Inc." On April 11, 1930, one Graves, acting for the said William H. W. Quick and Brother, Inc., wrote letters to the tenants of the Fairfield Apartments advising them that Quick and Brother were acting as agent for the Real Estate-Land Title and Trust Company. He also informed the janitor that Quick and Brother were taking possession of the building for the holder of the first mortgage and would manage the building.

On May 23, 1930, the Bankers Trust Company of Philadelphia instituted suit on the notes above referred to, and on June 13, 1930, obtained judgment, and on the same day the furniture and other personal property on the premises aforesaid were levied upon. The Real Estate-Land Title and Trust Company then made claim to the same, and the issue was accordingly raised and framed.

There was no reference on the "For Rent" sign as to change of ownership, or as to a new owner; nor were there any other signs or placards put up to indicate a change of ownership. There was no publication or advertisement of the change of ownership, nor were notices to that effect sent to creditors. The name "Fairfield Apartments" above the front entrance to the premises was left unchanged. Jules S. Elkish, who was treasurer of the Fairfield Apartments Corporation, was permitted to remain on the premises as an agent of the claimant for the purpose of renting out the apartments.

Counsel for the defendant, in his paper book sur defendant's motions for a new trial and for judgment for the defendant *non obstante veredicto*, proceeds upon the theory that the furniture and other property levied upon, and to which his client makes claim, passed to it under that provision in the mortgage to which reference has already been made, and that, therefore, the only question involved is whether there was a delivery of possession of the said personal property prior to the levy, and if there was, that the finding should have been in favor of the claimant. The plaintiff in execution (defendant in interpleader) contends to the contrary.

In view of the finding for the plaintiff in execution (defendant in interpleader), all the evidence and proper inferences therefrom favorable to the plaintiff in execution (defendant in interpleader) must, under the familiar

rule, be taken as true, and all unfavorable to him rejected: Hunter *v.* Pope, 289 Pa. 560, 562; Caldwell *v.* Continental Trust Co., 291 Pa. 35; Frank *v.* Reading Co., 297 Pa. 333; Snyder *v.* Penn Liberty Refining Co., 302 Pa. 320.

Viewed from this standpoint, the trial judge, who was the trier of the facts, could reasonably have found: (1) That the furniture and personal property levied upon were not within the class of articles enumerated in the clause of the mortgage heretofore referred to; (2) that if such articles were included, the pledgee failed to take possession of them at the time of the creation of the pledge; and (3) that the acts of the pledgee looking towards possession were not sufficiently open, notorious and exclusive.

A careful consideration of all the evidence convinces us that the trial judge properly found for the plaintiff in execution in the amount agreed upon. In determining the first question, it is necessary to consider carefully the phraseology of the clause in question in the mortgage, reading as follows: "Together with all machinery, including engines, boilers, dynamos, elevators, refrigerators, incinerators, steam and electric fixtures and appliances and all fixtures and other property generally now or which may hereafter be placed in or about said premises and appurtenant thereto, or used in connection therewith for the operation of the building as an apartment house," and apply the rules of law thereto applicable.

It is a familiar rule of construction—the rule of *ejusdem generis*—that general words following particular or specific terms are restricted in meaning to those things or matters which are of the same kind as those first mentioned: 13 C. J. 537; Renick *v.* Boyd, 99 Pa. 555; Burns *v.* Coyne, 294 Pa. 512; 6 R. C. L. 843; 3 R. C. L. Perm. Supp., p. 1835; Gohlke *v.* Hawkeye Commercial Men's Ass'n, 198 Iowa 144, 197 N. W. 1004, 35 A. L. R. 1177. In Burns *v.* Coyne, *supra*, Mr. Justice Walling says (page 516):

"What the words 'or other creditors' following the word 'judgment' really mean is, other creditors of like rank; that is, lien creditors. This accords with the familiar rule of statutory construction, that, where specific expressions are followed by those which are general, the latter will be confined to things of the same class as the former. . . . The other matters included must be of the same generic character: Renick *v.* Boyd, 99 Pa. 55; Pittsburg *v.* Pittsburg Rys. Co., 47 Pa. Superior Ct. 476."

In the instant case, the words "and other property generally" can only refer to that class of things of the same generic character which precede it; to wit, "machinery, including engines, boilers, dynamos, elevators, refrigerators, incinerators, steam and electric fixtures and appliances and all fixtures." By no stretch of the imagination can we possibly say that articles of furniture and the other articles of personal property that had been levied upon, as appears in the sheriff's appraisement, belong to that generic class of articles hereinabove enumerated. If the personal property levied upon had been either machinery or fixtures, the case would be otherwise. The plain and obvious meaning and intent of the clause in question is that it referred to what preceded it and the things which were specifically mentioned.

If, however, the claimant's contention be upheld—that is to say, that the furniture and other personal property levied upon were covered by the clause in question hereinabove referred to—the finding of the trial judge for the plaintiff in execution was still warranted by the testimony produced. If it was the intention of the mortgagor to create a chattel mortgage or a pledge of the personal property, certain requirements had to be complied with to make it valid as to third persons or creditors of the mortgagor. To constitute a contract one of pledge, three elements are necessary: (1) The pos-

session of the pledged property must pass from the pledgor to the pledgee; (2) the legal title to the pledged property must remain in the pledgor; and (3) the pledgee must have a lien on the property for the payment of a debt or performance of an obligation due him by the pledgor or some other person: Thompson v. Trust Co., 234 Pa. 452, 457; 49 C. J. 900, § 13.

The delivery of the personal property and the taking of possession thereof by the pledgee or mortgagee are essential. It has always been the policy of the law of Pennsylvania not to recognize chattel mortgages, except between the parties to the mortgage; and where other rights have intervened, chattel mortgages have been held to be against public policy, unless the mortgaged personalty was in the possession of the mortgagee. While there is legislation providing for the creation of chattel mortgages, to wit, the Act of April 17, 1876, P. L. 30, that legislation must be considered and construed as in the light of the law as it existed at the time of its enactment, and in view of the settled policy of the state. The Act of April 22, 1905, P. L. 280, does not change the law on the subject of chattel mortgages and the rights of creditors, nor does it purport to make any change in the policy of the law of Pennsylvania on the subject. That thought is expressed by Mr. Justice Mestrezat in Klaus v. Majestic Apartment House Co., 250 Pa. 194, 221:

"The necessary meaning of the act in view of the words of its title is that it must do so in the manner now prescribed by law, to wit, if it is a mortgage of real estate, to be valid as against subsequent purchasers and judgment, that mortgage must be recorded. If, on the other hand, it is to be a pledge of its personal property, to be valid as against creditors the pledge must be made in accordance with the established law, and as the nature of the word implies, the possession of the personal property must be given to the pledgee."

That principle of law has been followed since the decision in Clow v. Woods, 5 S. & R. 275, to which reference is made in Barnett v. Cain, 88 Pa. Superior Ct. 106, 108, wherein the court said:

"Since the decision of the Supreme Court in Clow v. Woods, 5 S. & R. 275, there has been no deviation from the general rule that delivery of possession is indispensable to transfer a title by the act of the owner that shall be valid against creditors: Barlow v. Fox, 203 Pa. 114."

In Boyle v. Rankin, 22 Pa. 168, the court held that an assignment or mortgage of personal property for a valuable consideration, unaccompanied by possession, though void as to creditors, is binding on the assignors; the court in that case saying (p. 171):

"Without possession the assignment was no security; for though valid and binding between the parties, it would have been held void as against creditors levying on the property in the hands of the Boyles, and it would have been void also as against bona fide purchasers without notice."

See, also, Milne, Brown & Co. v. Henry, 40 Pa. 352; Reyer v. Rice, 36 Pa. Superior Ct. 178; Maynard v. Shaw, 246 Pa. 330, in which case, although the mortgage was recorded, it was held that that did not except it from the general rule, because such an instrument was not within the recording acts. See, also, Sholes v. Asphalt Co., 183 Pa. 528.

If possession were taken, to be effective and valid it must have been done within a reasonable time: Hugus v. Robinson, 24 Pa. 9, in which Lowry, J., says (p. 12):

"A common, correct and adequate expression of the principal idea is, that the sale must be accompanied by a corresponding change of possession within a reasonable time: 2 Whart. 307; 6 Id. 53; 6 Watts, 29; 5 Id. 485; 3 State Rep. 329, 443. . . . These cases have not, however, changed the simple

rule, that the delivery must *bona fide* accompany the sale, or follow within a reasonable time afterwards. . . . A mere symbolical, formal or feigned delivery, where an actual and real one is reasonably practicable, is of no avail. It must be a delivery with a *bona fide* intention of really changing the possession as well as the title."

The attempted possession by the mortgagee or pledgee must be open, notorious and exclusive. If it is not, it is insufficient in law: Miller *v.* Garman, 69 Pa. 134, 137: "Change of possession must not only be actual, but it must be continued, in order to render a sale valid as against the vendor's creditors." In Shipler *v.* New Castle Paper P. Corp., 293 Pa. 412, Mr. Justice Sadler says (p. 421):

"The delivery must be actual and not merely symbolical where actual delivery is practicable, and if it is not practicable, the parties should leave nothing undone to secure the public from deception: Barlow *v.* Fox, 203 Pa. 114, 118."

Was everything done in this case that the pledgee or mortgagee should have done? It was for the trial judge, sitting as a jury, to say whether the assumption of control was bona fide or merely colorable, and whether it was enough to give notice to the world. In Hunter Construction Co. *v.* Lyons, 233 Pa. 561, the court says:

"The question in such case is, Did the vendee do all that he might reasonably be expected to do in the case of a real and honest sale?: McKibbin *v.* Martin, 64 Pa. 352."

What was done by the claimant in the instant case to indicate to creditors or to the public that it had assumed control of the personal property found by the sheriff? The testimony produced clearly indicates that it did not do anything to put creditors on notice. Quick and Brother, who were acting as agent for the pledgee, could, without any difficulty or trouble, have indicated on the "For Rent" sign the fact that the pledgee was the new owner and in possession. That was not done. If the personal property levied upon is considered as having passed under the disputed clause, there was no testimony at the trial to show that at the time of the creation of the chattel mortgage or pledge in question possession was then taken. If taken, it was done four years after the pledge was made. It has been held that possession taken after such an unreasonable length of time is clearly insufficient to cure the original defect of lack of change of possession: Carpenter *v.* Mayer, 5 Watts 483; Hugus *v.* Robinson, *supra.*

Attention is directed to the recent case of Bulger *v.* Wilderman & Pleet, 101 Pa. Superior Ct. 168, wherein, in a very able and exhaustive opinion, Keller, J., says (p. 173):

"The correct principle was stated by Chief Justice Gibson in Presbyterian Corp. *v.* Wallace, 3 Rawle 119, 127, 128, as follows: 'In form, a mortgage is certainly a conveyance; but it is unquestionably treated at law here, in the way it is treated in equity elsewhere, as a bare encumbrance, and the accessory of a debt. As between the parties it is a conveyance, so far as is necessary to enforce it as a security; as regards third persons, the mortgagor is the owner, even of the legal estate.' "

And on page 174, quoting from a recently-published article of Prof. William H. Lloyd (73 U. of P. Law Rev. 43), ". . . while many of our decisions are difficult, if not impossible, to be reconciled (a view which seems to be supported by a reading of the cases), the title to the mortgaged premises may be accounted in the mortgagee 'as between the parties' to the transaction represented by the mortgage, 'so far as it is necessary to render the instrument effective as a security,' but 'as to all other persons [with some special excep-

tions] the mortgagor is regarded as the owner, and the mortgage as a mere encumbrance and accessory to the debt,' which summarizes the predominant effect of our decisions."

After a careful consideration of all the evidence, the court *in banc*, finding that the trial judge committed no error in his rulings upon evidence or in his finding, dismisses the defendant's motions for a new trial and for judgment *non obstante veredicto*.