# Klaus v. Majestic Apartment House Company, Appellants.

*Mortgages—Mortgage of personal property—Fixtures—Acts of April 17, 1876, P. L. 30; May 21, 1889, P. L. 257, and April 22, 1905, P. L. 280—Second mortgage—Waiver of lien.*

1. A mortgage of personal property without a change of possession confers no lien upon the mortgagee. Neither the Acts of April 17, 1876, P. L. 30; May 21, 1889, P. L. 257, nor the Act of April 22, 1905, P. L. 280, changes the law in this respect.

2. The furniture, household furnishings, table ware, etc., used in a hotel, are not to be deemed fixtures, and are not bound by the lien of a mortgage purporting to include these articles within its terms.

3. Where the holders of a second mortgage have accepted the same subject to the prior lien of a first mortgage, they cannot afterwards compete with the holders of the first mortgage in the distribution of a fund created by the sale of a portion of the property covered by the mortgages, even though no valid lien upon the property sold was conferred thereby.

4. A first and second mortgage covering property of an apartment house company included in their terms, not only the realty but also the personalty upon the premises. The second mortgage was made expressly subject to the lien of the first mortgage. The court rejected the contention that a lien upon the personal property contained in the hotel was conferred by either mortgage, and awarded a fund produced by the sale of such personal property, first, to execution creditors, and, second, to the holders of the first mortgage, to the exclusion of the holders of the second mortgage. *Held,* no error.

Argued March 24, 1915. Appeals, Nos. 107 and 108,

Jan. T., 1915, by Security Trust Company of Camden, N. J., and the Fidelity Title and Trust Company, from judgment of C. P. No. 1, Philadelphia Co., Dec. T., 1913, No. 3224, on case stated, in cases of William Klaus v. Majestic Apartment House Company: The Real Estate Trust Company of Philadelphia, Trustee named in a certain Indenture of Mortgage, dated November 20, 1902, executed by the Majestic Apartment House Company v. Majestic Apartment House Company; Security Trust Company of Camden, New Jersey, Trustee under Mortgage dated January 25, 1909, given by Majestic Apartment House Company; Wingate & Son to the use of Mary T. Brown; Joseph R. Wainwright; C. Herbert Simon; Siegfried Koppel, and John A. McCarthy and James S. McCartney, Receivers of the Majestic Apartment House Company. Before BROWN, C. J., MESTREZAT, POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Bill in equity for the appointment of a receiver.

Case stated to determine the extent and priority of liens on the property in the hands of the receiver. Before PATTERSON, J.

The case stated was as follows:

1. Majestic Apartment House Company, on November 20, 1902, executed a mortgage to secure the payment of an issue of bonds of the aggregate par value of $1,000,000, which mortgage was duly recorded in the recorder's office of Philadelphia County, in Mortgage Book W. S. V., No. 108, page 396, etc., upon the first day of December, 1902. The bonds secured by said mortgage are all issued and outstanding and owned by and in the legal possession of Fidelity Title and Trust Company, a corporation located at Pittsburgh.

2. The granting clause of said deed of trust or first mortgage in which the property is conveyed, or purports to be conveyed as security for the payment of the one million dollars in bonds at par, is as follows, to wit:

"Now therefore this indenture witnesseth: That the said party of the first part, in consideration of the premises and the sum of one dollar to it paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, and for the purpose of securing the due and punctual payment of the bonds aforesaid issued or to be issued as herein provided, and of the interest thereon, hath granted, bargained, sold, transferred, assigned, set over, conveyed and confirmed, and by these presents doth grant, bargain, sell, transfer, assign, set over, convey and confirm unto the said trustee and to its successors and assigns forever, all and singular the real and personal property and franchises of every name and nature whatsoever situate, whether now held or owned, or hereafter acquired by the said party of the first part; and more particularly all of its apartment house and hotel, consisting of the real estate, buildings, fixtures, furniture and plant, situate in the City of Philadelphia, and described as follows:

"All that certain lot or piece of ground, with the tenement or messuage thereon erected, situate in the Twentieth Ward of the City of Philadelphia, beginning at a point in the east side of Broad street (113 feet wide) at the distance of twenty-four feet northward from the north side of Girard avenue (120 feet wide), thence eastward on a line parallel with Girard avenue aforesaid, and passing through the center of the party wall, one hundred and sixty feet, thence northward along the west side of Watts street (40 feet wide), two hundred and ten feet, thence westward along the south side of Stiles street (70 feet wide) one hundred and sixty feet, and thence southward along the east side of Broad street aforesaid, two hundred and ten feet to the place of beginning. (Being the same premises which Charles S. Baker, by indenture bearing date the fifteenth day of July, A. D. 1902, and intended to be forthwith recorded at Philadelphia in the office of the recorder of deeds,

granted and conveyed unto Majestic Apartment House Company in fee.)

"Together with the machinery, furniture, fixed and movable, engines, boilers, and other articles necessary and appurtenant to or now or hereafter to be used in and about the said hotel plant, which the company owns at the present time, or which it may hereafter acquire; and together with all and all manner of franchises of every kind and description, however derived, or wherever located, under the control of, or which have been conferred upon the party of the first part, and more especially the franchises conferred upon the said party of the first part by the Commonwealth of Pennsylvania."

3. On January 25, 1909, Majestic Apartment House Company executed and delivered to Security Trust Company, of Camden, New Jersey, a mortgage to secure the payment of an issue of bonds of the aggregate par value of $500,000, which was duly recorded in Mortgage Book W. S. V. No. 1520, page 229, etc., upon the fifth day of February, 1909. The bonds secured by said mortgage are all issued and outstanding in the hands of various parties.

4. The granting clause of the said deed of trust, or second mortgage, in which the property is conveyed or purports to be conveyed as security for the payment of the $500,000 in bonds at par, is as follows, to wit:

"Now therefore this indenture witnesseth: That the said party of the first part in consideration of the premises and the sum of one dollar to it paid at or before the sealing and delivery of these presents the receipt whereof is hereby acknowledged and for the purpose of securing the due and punctual payment of the bonds aforesaid issued or to be issued as herein provided and of the interest thereon, hath granted, bargained, sold, transferred, assigned, set over, conveyed and confirmed, and by these presents doth grant, bargain, sell, transfer, assign, set over, convey and confirm unto the said trustee and to its successors and assigns forever, all and singular

the real property, fixtures and franchises of every name and nature whatsoever situate, whether now held or owned, or hereafter acquired by the said party of the first part, and more particularly all of its apartment house and hotel, consisting of the real estate, buildings, machinery, fixtures and equipment forming a going plant, situate in the City of Philadelphia, and described as follows:

"All that certain lot or piece of ground with the tenement or messuage thereon erected, situate in the Twentieth Ward of the City of Philadelphia, beginning at a point in the east side of Broad street, 113 feet wide, at the distance of twenty-four feet northward from the north side of Girard avenue, 120 feet wide, thence eastward on a line parallel with Girard avenue aforesaid, and passing through the centre of the party wall, one hundred and sixty feet, thence northward along the west side of Watts street, forty feet wide, two hundred and ten feet, thence westward along the south side of Stiles street, seventy feet wide, one hundred and sixty feet, and thence southward along the east side of Broad street aforesaid, two hundred and ten feet to the place of beginning. (Being the same premises which Charles S. Baker, by indenture bearing date the fifteenth day of July, A. D. 1902, and intended to be forthwith recorded at Philadelphia in the office of the recorder of deeds, etc., granted and conveyed unto Majestic Apartment House Company in fee.)

"Said property being subject nevertheless to a first mortgage encumbrance of one million dollars, as above set forth, dated November 20, 1902, and duly recorded.

"Together with the machinery, fixtures, engines, boilers, and other articles necessary and appurtenant to or now or hereafter to be used in and about the said hotel plant, which the company owns at the present time, or which it may hereafter acquire; and together with all and all manner of franchises of every kind and description, however derived, or wherever located, under the

control of, or which have been conferred upon the party of the first part, and more especially the franchises conferred upon the said party of the first part by the Commonwealth of Pennsylvania."

5. Said second mortgage, by its recitals, as well as by the granting clause thereof, showed that it was "to be second in lien, however, to a prior mortgage of one million dollars, dated November 20, 1902."

6. Joseph R. Wainwright, on February 24, 1909, secured a judgment against the Majestic Apartment House Company, as of C. P. No. 5, of Philadelphia County, December Term, 1908, No. 5564, damages being assessed on December 15, 1913, in the sum of $13,200.

7. On December 13, 1913, C. Herbert Simon obtained a judgment and assessed damages against the Majestic Apartment House Company as of C. P. No. 2, of Philadelphia County, September Term, 1913, No. 3536, in the sum of $9,526.82.

8. On December 13, 1913, C. Herbert Simon issued a writ of fieri facias on his judgment, and the sheriff, pursuant to the terms of the writ, levied upon all of the stock, fixtures and household furniture and contents of said hotel and apartment house. A complete list of the property of the Majestic Apartment House Company, so levied upon, is contained in the catalogue issued by Barnes & Lofland, auctioneers.

9. On December 15, 1913, a writ of fieri facias was issued upon the judgment obtained by Joseph R. Wainwright, above set forth, and the sheriff, by virtue of the said writ, levied upon the same property as was covered by the levy of said C. Herbert Simon.

10. On the ninth day of January, 1914, William Klaus, a stockholder of the Majestic Apartment House Company, filed his bill in equity for the appointment of receivers for said company, and on January 14, 1914, John A. McCarthy and James S. McCartney were appointed receivers.

11. On February 10, 1914, The Real Estate Trust

Company of Philadelphia petitioned the court for leave to intervene in this cause and for leave to have the said receivers vested with the powers of receivers under the terms of the first mortgage, which order and decree was granted by the court.

12. On March 10, 1914, foreclosure proceedings were begun in this cause upon the first mortgage.

13. On May 6, 1914, a bill in equity was filed by The Real Estate Trust Company of Philadelphia, trustee under the first mortgage hereinbefore recited, for an order upon C. Herbert Simon restraining him from proceeding upon the writ of fieri facias issued by him under his judgment, and a special hearing was held on May 11, 1914, upon the application for a preliminary injunction, and the court granted an injunction and entered a decree, a copy of which is as follows:

"And now, to wit, May eleventh, 1914, upon consideration of the bills for restraining orders filed in the above-entitled causes by The Real Estate Trust Company of Philadelphia, trustee, etc., praying, inter alia, that C. Herbert Simon and the sheriff of Philadelphia County should be restrained as to the execution levied upon certain personal property of the Majestic Apartment House Company, in the cause entitled 'C. Herbert Simon v. Majestic Apartment House Company, C. P. No. 2, September term, 1913, No. 3536,' and after due hearing in open court by this court in conjunction with the president judge of the Court of Common Pleas No. 2, and at the conclusion of such hearing, by consent of counsel, the said cause entitled in the Court of Common Pleas No. 2, as above, was transferred to this court to the cause of the first of the above-entitled numbers, it is ordered that C. Herbert Simon and A. Lincoln Acker, high sheriff of Philadelphia County, be, and they hereby are, restrained from proceeding further to execution under the writ of fieri facias issued under the judgment in the cause entitled 'C. Herbert Simon v. Majestic Apartment House Company, C. P. No. 2, September

Term, 1913, No. 3536,' which was levied upon the stock, fixtures and household furniture and contents of the Majestic Apartment House Company, and more particularly from proceeding further with the sale of such property advertised to take place upon May 13, 1914; and that such writ shall be retained in the hands of such sheriff as unreturned until the final disposition of the fund realized by the sale of said property so levied upon at the hands of The Real Estate Trust Company of Philadelphia, trustee, etc., under its above-entitled foreclosure bill, as set forth in said bill, such lien upon said property so levied upon as the said C. Herbert Simon acquired by virtue of said levy to be maintained and relegated and attached to the fund to be produced by the trustee's sale aforesaid; the decision of all questions of rights in said fund priority, and order of lien and awards thereunder to be decided at the time of the distribution of such fund; the proceeds of the property levied upon under said writ to be earmarked in the hands of such trustee, and to be distributed as a separate fund, representing in all respects as to rights of participation therein the property itself, as though the liens thereon had not been discharged by the sale.

"This order to be conditioned upon the Fidelity Title and Trust Company of Pittsburgh, the holder of all the bonds of the Majestic Apartment House Company secured by the mortgage to the Real Estate Trust Company of Philadelphia, trustee, stipulating and agreeing of record in this cause that it will bid, or cause to be bid, at the sale by such trustee as aforesaid under the decree of foreclosure, of such property so levied upon, a sum of at least thirty thousand dollars ($30,000) and upon entering the usual injunction bond in the sum of $12,000.

"BREGY, P. J.

"May 12, 1914, The Fidelity Title and Trust Co. (of Pittsburgh) is approved as security.

"BREGY, P. J."

14. On May 6, 1914, a similar bill in equity was filed

by The Real Estate Trust Company of Philadelphia, trustee under said hereinabove recited first mortgage, for an order upon Joseph R. Wainwright, restraining him from proceeding upon the writ of fieri facias issued by him under his judgment, and at the special hearing held on May 11, 1914, recited in paragraph 13 hereof, upon the application for a preliminary injunction, the court granted an injunction and entered a decree, similar in all respects (save as to court, term and number and the names of the parties) to the decree entered in the injunction proceedings against C. Herbert Simon, and more fully set forth in paragraph 13, hereinabove.

15. On May 13, 1914, C. Herbert Simon appealed to the Supreme Court, to January Term, 1914, No. 181, assigning as error the entry of the decree quoted in paragraph 13, above.    Said appeal was dismissed on May 22, 1914, by the Supreme Court in a per curiam opinion, reported in 245 Pa. 585, at 588.    Said opinion follows:

"The decree appealed from was made in the exercise of the chancery powers of the court.    It does not deprive the appellant of his right to have his execution satisfied out of the proceeds of the sale of the personal property of the Majestic Apartment House Company if he has such right.    The bond given by the Fidelity Title and Trust Company insures the payment for said property of a sum largely in excess of what will be required to pay the appellant if he has the preference which he claims. Whether he has such preference can be determined by the court after due consideration upon final hearing or on distribution of the proceeds of sale made by the receiver.    We have not been persuaded that we should depart from the rule as to the noninterference with preliminary injunctions, and the appeal is dismissed without prejudice to any rights of the appellant, the costs to be disposed of on final hearing."

16. The Real Estate Trust Company of Philadelphia, as hereinbefore recited, having started foreclosure proceedings, proceeded with the same, and a decree order-

ing sale was entered on the twenty-fifth day of May, 1914, which said decree reserved

"....for future decision by the court, the question as to the priority of such lien over other liens upon the personal property included in such conveyance in mortgage."

Said decree further provided that the sale should be conducted by first offering the entire plant as a whole (including the real estate, engines, boilers and fixtures, furniture and other personal property contained in the hotel and apartment house); secondly, by offering the real estate, engines, boilers, and fixtures; and thirdly, by offering the furniture and other personal property. Provision was therein made for earmarking the proceeds of the sale of personalty, if the place were sold as an entirety (as subsequently transpired) and the trustee was in such event directed to report to the court for distribution as though the sale had been of the personalty under the third method of sale above set forth. By said decree, all parties were, by virtue of the sale, to be barred of any equity of redemption.

17. In accordance with the above recited decree of foreclosure, The Real Estate Trust Company of Philadelphia, as trustee, as aforesaid, exposed the property for sale and made return to the court. A final decree was entered by the court on the fifth day of December, 1914, a copy of which is as follows:

"And now, to wit, December 5, 1914, no exceptions having been filed to the decree entered on November 23, 1914, after the hearing of the trustee's return of sale on that date, of which hearing all parties of record had notice and opportunity to be heard, and no objection to the form of the decree then presented having been made, it is "ordered, adjudged and decreed, that the decree entered by this court, on November 23, 1914, shall be, and the same hereby is forthwith made final and absolute as the final decree in this cause, to wit:

"1. That the sale to Fidelity Title and Trust Company of Pittsburgh, on October 1st, 1914, of the property hereinafter more particularly described, be, and the same is hereby confirmed.

"2. That upon the expiration of twenty-one days from the date of this decree, unless an appeal be taken therefrom in the meantime, The Real Estate Trust Company of Philadelphia, as trustee, mortgagee, named in the indenture of mortgage, dated November 20th, 1902, and given by Majestic Apartment House Company, to foreclose which these proceedings were instituted, be, and it is hereby directed, upon receipt of the consideration set forth in paragraphs 3 and 4 of this decree, to execute and deliver to Fidelity Title and Trust Company of Pittsburgh, its deed, granting and conveying to said Fidelity Title and Trust Company of Pittsburgh, its successors and assigns, free from all and every the trusts by said indenture of mortgage created, free and clear of all rights or claim of redemption on the part of Majestic Apartment House Company, or any other person or persons whomsoever, and free and discharged of all liens and encumbrances of whatsoever description subsequent to the date of recording of said mortgage and without liability upon the part of the said Fidelity Title and Trust Company of Pittsburgh, purchaser, as aforesaid, to see to the application of the purchase-money, all the land, property, rights, estates and franchises of Majestic Apartment House Company in said indenture of mortgage described, as also all the property, rights, estates and franchises of Majestic Apartment House Company, mortgagor, acquired since the execution and delivery of the said mortgage, and particularly those specially described in said mortgage and by said Majestic Apartment House Company, mortgagor as aforesaid, owned and possessed at the time of the institution of these proceedings of foreclosure, as follows:

"All and singular the real and personal property and franchises of every name and character whatsoever situ-

ate, now held or owned by the said mortgagor, and more particularly all of its apartment house and hotel, consisting of the real estate, buildings, fixtures, furniture and plant, situate in the Twentieth Ward of the City of Philadelphia, particularly describing the real estate.

"Together with the machinery, furniture, fixed and movable, engines, boilers, and other articles necessary and appurtenant to or now used in and about the said hotel plant; and together with all and all manner of franchises of every kind and description, however derived, or wherever located, under the control of, or which have been conferred upon the said Majestic Apartment House Company, and more especially the franchises conferred upon it by the Commonwealth of Pennsylvania.

"3. That Fidelity Title and Trust Company of Pittsburgh, purchaser as aforesaid, in making settlement for the payment of the purchase-money, be entitled and permitted to deliver to the trustee (who is hereby directed to receive the same) the bonds and coupons secured by said indenture of mortgage of November 20th, 1902, which may then be unpaid, and held by said Fidelity Title and Trust Company of Pittsburgh, toward the payment of the purchase price of $651,000.00, bid at said public sale held on October 1st, 1914, reckoning and computing said bonds and coupons for that purpose, at a sum equal to and not exceeding that which shall be payable out of the net proceeds of the said sale to the purchaser, Fidelity Title and Trust Company of Pittsburgh, as the holder of such bonds and coupons, for its just share and proportions thereof, upon a due accounting and distribution thereof, (and after allowing for the proportion of payment required by paragraph 4 of this decree to be paid in cash,) which sum so allowed on account of payment shall be credited on the bonds and coupons so presented, after the final accounting of the trustee and in the amounts as ascertained and directed by the court.

"4. That the Fidelity Title and Trust Company of Pittsburgh, purchaser as aforesaid, in making present settlement for the payment of the purchase-money, be required to pay The Real Estate Trust Company of Philadelphia, trustee, mortgagee, in addition to the sum of $60,000.00 paid on October 1st, 1914, on account of its bid of $651,000.00 the sum of $102,046.15, in accordance with the estimate of claims having probable or possible priority in payment over the said deposited first mortgage bonds and accompanying coupons, set forth in the trustee's return of sale filed November 23d, 1914, which sum so paid by said purchaser, and any further cash sums which may be found by the court to be required to be paid by the purchaser to satisfy any claims entitled to priority over said bonds, shall be held by the trustee and distributed in accordance with the further order of this court relating to the due accounting and distribution thereof.

"5. That such amount of the cash sum or sums paid by the said purchaser, Fidelity Title and Trust Company of Pittsburgh to the trustee under this and the previous orders of the court as is found by the court not to be required to satisfy claims entitled to payment in priority to said bonds, shall be repaid to the purchaser, Fidelity Title and Trust Company, as hereafter directed by the court.

"6. That of the cash sum or sums paid or required to be paid by the purchaser as aforesaid on account of the purchase-money, the amount of $30,046.15, shall be held by the trustee as a separate fund in accordance with the previous orders of the court, to represent the proceeds of certain property in the hotel which was exposed to sale and sold by the trustee under the third method set forth in the decree of sale, in accordance with the said previous orders of the court and which produced the highest registered bid of $30,000.00, as set forth in the trustee's return of sale; and which fund shall represent in distribution the entire proceeds of the sale of such

property, and be subject to distribution as though it were the property itself, subject to whatever lawful claims may be established, as against such property as before conversion and distribution of such special fund shall be made as hereafter determined by the court."

18. The Majestic Apartment House Company retained exclusive control and possession of the personal property hereinbefore referred to up until the date of the levies made by the sheriff upon the judgments held by the said C. Herbert Simon and Joseph R. Wainwright.

19. Neither The Real Estate Trust Company of Philadelphia, the trustee under the hereinbefore recited mortgage of $1,000,000, nor any of the holders of bonds secured by the said mortgage, took any action of any kind whatsoever to secure actual physical possession of the said personal property until after the property had been levied upon by the sheriff by virtue of the writs issued on the judgments held by C. Herbert Simon and Joseph R. Wainwright, nor was any action taken by or on behalf of the said trustee or the holders of said bonds in relation to the said personal property whatsoever, until the court, by the decree hereinbefore referred to in paragraph 11, vested the receivers of Majestic Apartment House Company with powers of receivers under the mortgage.

20. Neither Security Trust Company, of Camden, New Jersey, trustee under the mortgage to secure payment of the bond issue of $500,000, nor any of the holders of bonds secured by the said mortgage, took any action whatsoever in reference to securing actual physical possession of the said personal property.

21. No actual physical delivery or any attempt at such delivery of the said personal property was ever made by Majestic Apartment House Company, either to said The Real Estate Trust Company of Philadelphia, trustee, or to Security Trust Company, of Camden, New Jersey, trustee, under the above recited mortgages, or to any of the bondholders secured by the said two mortgages.

22. The property sold (which created the fund of $30,-046.15, as aforesaid), was purchased for use in and contained in the apartment house and hotel, and consisted of the property specifically set forth in the catalogue issued by Barnes & Lofland.    Whether all of this property was in use in the apartment house and hotel at the time of the levies, or whether all of this property was in the possession of the mortgagor, and in use in the apartment house and hotel at the date of the execution and recording of either or both of said mortgages, and if not, what portion was so in use or in possession of the said mortgagor, it is now impossible to state with any degree of certainty.

23. The personal property sold by the order of the court, the sale of which was confirmed in the above recited decree of December 5, 1914, comprised the property set forth in the auctioneer's catalogue, and was the property levied upon by the sheriff by virtue of the writs of fieri facias issued upon the judgment of C. Herbert Simon and the judgment of Joseph R. Wainwright.    The fund of $30,046.15, referred to, is in the hands of The Real Estate Trust Company of Philadelphia, trustee, as aforesaid, in a separate fund, and the court is requested to make such order concerning the distribution of this fund of $30,046.15 as is just and proper under the hereinbefore recited facts, the said fund being claimed first, by C. Herbert Simon and Joseph R. Wainwright (to the extent, only, however, of their judgments, with interest and costs thereon); secondly, by Fidelity Title and Trust Company (of Pittsburgh, Pennsylvania) under and by virtue of the first mortgage bonds owned and held by it, and more particularly, under and by virtue of the decree of December 5, 1914; and, thirdly, by Security Trust Company, of Camden, New Jersey, under and by virtue of the second mortgage hereinbefore referred to, under which it acts as trustee.

24. Each of the parties hereto reserves the right of appeal.

PATTERSON, J., filed the following opinion:

This proceeding arises on a case stated regarding the distribution of a fund of $30,046.15, realized upon the sale of the personal property of the Majestic Apartment House Company, sold upon foreclosure of the first mortgage given by that company.

The essential facts contained in the case stated are as follows:

On November 20, 1902, the Majestic Apartment House Company executed to the Real Estate Trust Company of Philadelphia a mortgage to secure the payment of bonds of the aggregate par value of $1,000,000. This mortgage was upon

"All and singular the real and personal property and franchises, of every name and nature whatsoever, whether now held or owned or hereafter acquired by the 'Majestic Apartment House Company' more particularly all of its apartment house and hotel consisting of the real estate, buildings, fixtures, furniture and plant, situate in the City of Philadelphia."

After describing the real estate the mortgage adds:

"together with the machinery, furniture, fixed and movable, engines, boilers and other articles necessary and appurtenant to or now or hereafter to be used in and about the said hotel plant which the company owns at the present time or which it may hereafter acquire."

On January 25, 1909, the Majestic Apartment House Company executed to the Security Trust Company of Camden another mortgage to secure the payment of bonds of the aggregate par value of $500,000. This mortgage by its terms was secured upon

"All and singular the real property, fixtures and franchises of every name and nature wheresoever situate, whether now held or owned or hereafter acquired by 'The Majestic Apartment House Company' and more particularly all of its apartment house and hotel, consisting of the real estate, buildings, machinery, fixtures and equip-

ment forming a going plant, situate in the City of Philadelphia."

After the description, which is the same as in the first mortgage, are the words

"Together with the machinery, fixtures, engines, boilers and other articles necessary and appurtenant to or now or hereafter to be used in and about the said hotel plant which the company owns at the present time or which it may hereafter acquire."

In the mortgage to the Security Trust Company, immediately after the words of the description of the real estate, is the following clause:

"Said property being subject nevertheless to a first mortgage encumbrance of $1,000,000, as above set forth, dated November 20th, 1902, and duly recorded."

This mortgage also recites the resolution of the board of directors of the Majestic Apartment House Company containing the words:

"Said mortgage being second in lien, however, to a prior mortgage for $1,000,000, dated November 20th, 1902."

In December, 1913, Simon and Wainwright, each of whom had, subsequent to the making of both of these mortgages, obtained judgments against the Majestic Apartment House Company, issued executions thereon and attempted to levy upon the personal property of the Majestic Apartment House Company. The executions were stayed and orders made directing that the property levied upon should be separately sold and the proceeds brought into court for distribution in this cause.

Subsequently to the issuance of these executions the bill in equity, which was the commencement of the present proceedings, was brought, and the receivers appointed.

The question, therefore, to be decided is, which of the parties has a lien upon the fund, or any part thereof.

Let us take up the claims of the various parties in

accordance with the chronological order of their alleged liens; namely:

(1) The Real Estate Trust Company of Philadelphia, first mortgagee;

(2) Security Trust Company of Camden, New Jersey, second mortgagee;

(3) Messrs. Simon and Wainwright, execution creditors.

I. Is the mortgage of November 20, 1902, which was executed by the Majestic Apartment House Company to the Real Estate Trust Company of Philadelphia, to secure the payment of bonds of the aggregate par value of $1,000,000, a lien upon personal property, consisting of furniture and plant, as against the execution creditors of the company?

In 1902, when the mortgage to the Real Estate Trust Company was given, the issuance of corporate mortgages was governed by the statute of May 21, 1889, P. L. 257; (1 Stewart's Purdon, 812), the relevant portion of which reads as follows:

"It shall be lawful for all corporations to borrow money or to secure any indebtedness created by them, by issuing bonds, with or without coupons attached thereto, and to secure the same by a mortgage or mortgages to be given and executed to a trustee or trustees for the use of the bondholders upon their real estate and machinery or on their real estate alone to an amount not exceeding one-half of the capital stock of the corporation paid in, and at a rate of interest not exceeding six per centum."

The amount of the indebtedness which might lawfully be issued was controlled by Section 1 of the Act of February 9, 1901, P. L. 3; (1 Stewart's Purdon, 808), which provides that:

"The capital stock or indebtedness or both of any corporation created by general or special law may, with the consent of the persons or bodies corporate holding the larger amount of value of its stock, be increased to such an amount in the aggregate of each as it shall deem nec-

essary to accomplish and carry on and enlarge the business and purpose of the corporation."

There can be no doubt that the Majestic Apartment House Company, by the mortgage of 1902, was attempting to mortgage its personal property other than its machinery. That it recognized the distinction between furniture and machinery was apparent by the words of the mortgage, which purported to assign not merely buildings, but "fixtures, furniture and plant," as stated in one passage, or "the machinery, furniture, fixed and movable, engines, boilers and other articles necessary and appurtenant to......said hotel plant" as stated in another passage.

The company, therefore, was attempting to create, by its first mortgage, a lien upon other articles than those which it was authorized to mortgage by the statutes of this Commonwealth then in force. Only "real estate and machinery" or "real estate alone" was covered by the Act of 1889, and the Act of 1901, while it varied the amounts for which the mortgage might be created, did not enlarge the kinds of property upon which the mortgage could be placed.

Counsel for the Fidelity Title and Trust Company of Pittsburgh, which is the owner of the bonds secured by the first mortgage, has ingeniously argued that under the terms of the mortgage the words "hotel plant" include all personal property in such "plant," necessary for its operation as such, whether or not attached to the realty, and should consequently be treated as realty.

We have examined with great care the authorities submitted by the learned counsel in his attempt to sustain this position. We are of opinion, however, that while, as between the mortgagee and the mortgagor, such an interpretation might prevail, if it were the intention of the parties to create such a mortgage, yet the law of Pennsylvania is well settled that chattel mortgages are void as against creditors.

The latest judicial utterance upon this subject is to be

found in Barlow v. Fox, 203 Pa. 114. In that case the Supreme Court held that a pledge of hotel furniture was invalid against creditors unless there was a delivery of possession.

Mr. Justice FELL, in delivering the opinion of the court, said (p. 118) :

"There has been no deviation from the general rule that delivery of possession is indispensable to transfer a title, by the act of the owner, that shall be valid against creditors."

The learned counsel for the Fidelity Title and Trust Company also argued that a hotel company may mortgage its furniture and equipment under the provisions of the Act of 17th April, 1876, P. L. 30 (2 Stewart's Purdon, 13th Ed., page 1847).

We have carefully read this act of assembly and fail to find that it anywhere provides that a chattel mortgage good against creditors may be created whereby the mortgagor retains possession of the personalty.

Clearly, therefore, the mortgage of 1902 created no lien upon the furniture of the hotel. As to that mortgage the liens created by the executions of Simon and Wainwright are good, because they are levied upon properties which the mortgagor could not, at the time of the creation of the mortgage, have bound by its mortgage.

II. Is the mortgage of January 25, 1909, which was executed by the Majestic Apartment House Company to the Security Trust Company of Camden, to secure the payment of bonds of the aggregate par value of $500,000, a lien upon the personal property, consisting of furniture and plant, as against the execution creditors of the company?

Before taking up the question of whether or not the second mortgage is a valid lien upon the fund in controversy, so far as general creditors are concerned, we wish to say that we are of opinion that all the property of the Majestic Apartment House Company mentioned in the second mortgage is subject to a prior lien of the

first mortgage. We base this conclusion upon the ground that the second mortgage was, in express terms, made subject to the lien of the first mortgage, the holders of the second mortgage bonds having waived any objection which might otherwise have been urged against the validity of the first mortgage bonds.

In Bronson v. La Crosse & Milwaukee Railroad Co., 69 U. S. 283, it was held that where a mortgage is made in express terms subject to certain bonds secured by prior mortgage, those bonds being negotiable in form, and having, in fact, passed into circulation before such mortgage was given, the junior mortgagees, and all parties claiming under them, are estopped from denying the amount or validity of such bonds so secured, if in the hands of bona fide holders.

See also: Fidelity Ins. Trust & Safe Deposit Co. v. West Penn. & Shenango Connecting Railroad Co., 138 Pa. 494.

It thus appearing that the rights of the second mortgage bondholders are subject to the rights of the first mortgage bondholders, let us see whether the second mortgage is a lien upon the furniture of the hotel.

After the creation of the mortgage of 1902 and before the creation of the mortgage of 1909, the legislature by an act approved April 22, 1905, P. L. 280; (5 Stewart's Purdon, 5340), Amended Section 1 of the Act of February 9, 1901, P. L. 3, above quoted by inserting, after the words, "the aggregate of each," the words, "without regard to the amount of the other and regardless of any limitation upon the amount of either prescribed in any general or specific law regulating such corporation"; and by adding at the end of the clause the following words:

"And upon the authorizing of any such increase of indebtedness by the stockholders of such corporation in the manner hereinafter provided, it shall be lawful for such corporation to secure the payment of the principal or interest or both of all or any part of such indebtedness.

by mortgage, deed of trust or other pledge or conveyance by way of security of all or any part of its real and personal property, rights, privileges and franchises and in such manner and upon such terms as its board of directors may determine."

This Act of 1905 by its title makes no pretense of changing the law on the subject of chattel mortgages and the rights of creditors, and does not purport to make any change in the policy of the law of Pennsylvania on this subject. The plain meaning of the act is that a corporation is relieved from the limitation heretofore existing upon the amount of the indebtedness as compared to this capital stock, and, second, that a corporation may borrow money upon a mortgage of its real estate, or by a deed of trust, or by a pledge or conveyance of any of its real or personal property. The necessary meaning of the act in view of the words of its title is that it must do so in the manner now prescribed by law, to wit, if it is a mortgage of real estate, to be valid as against subsequent purchasers and judgments, that mortgage must be recorded. If, on the other hand, it is to be a pledge of its personal property, to be valid as against creditors the pledge must be made in accordance with the established law, and as the nature of the word implies, the possession of the personal property must be given to the pledgee: Roberts' & Pyne's App., 60 Pa. 400.

The act should be construed in accordance with the public policy of the State of Pennsylvania, if such a construction is possible. Assuming, however, that it was the intention of the legislature to change the policy of the State as to chattel mortgages, certainly the title of the act does not give the slightest intimation of such intention. The act is entitled:

"An act to amend section one of the act entitled 'An act to provide for increasing the capital stock and indebtedness of corporations' approved the ninth day of February, Anno Domini one thousand nine hundred and

one; authorizing corporations to increase their capital stock and indebtedness and secure the payment of principal and interest of their indebtedness."

If the legislature intended to authorize chattel mortgages and to permit the property to remain in possession of the mortgagor and to make such mortgage good as against creditors, there should have been incorporated in the title of the act the language of the act which is relied upon as authority for the same, viz:

"By mortgage, deed of trust, or other pledge or conveyance, by way of security, of all or any part of the real and personal property, rights, privileges and franchises, and in such manner and upon such terms as its board of directors may determine,"
or equivalent language. We know of no rule of constitutional construction which would permit us to read into the title of the act the language above quoted or any equivalent thereof, and then proceed on that basis to construe the act as changing the settled policy of the Commonwealth of Pennsylvania regarding chattel mortgages. We are, therefore, of the opinion that the act is unconstitutional for the reasons above given.

Counsel for the execution creditors have also suggested that to construe the Act of 1905 so that it would authorize chattel mortgages, good against creditors, would be not only in violation of Article III, Section 7, of the Constitution of Pennsylvania, prohibiting the granting to any corporation of any exclusive privilege or immunity, but also Article III, Section 7, of the Constitution, prohibiting special or local law changing methods for the collection of debts.

We are of opinion that it is unnecessary to decide whether or not these provisions of our State Constitution would be violated.

III. Are the execution creditors entitled to the full amount of their claim?

From what we have already said it would appear that the first and second mortgagees have no lien as against

the rights of execution creditors upon the personal property which they attempted to cover by their mortgages.

The admitted facts show that on February 24, 1909, Joseph R. Wainwright secured a judgment against the Majestic Apartment House Company, as of C. P. No. 5, of Philadelphia County, December Term, 1908, No. 5564, damages being assessed on December 15, 1913, in the sum of $13,200; and that on December 13, 1913, C. Herbert Simon obtained a judgment and assessed damages against the Majestic Apartment House Company, as of C. P. No. 2, of Philadelphia County, September Term, 1913, No. 3536, in the sum of $9,526.82.

On December 13, 1913, C. Herbert Simon issued a writ of fieri facias on his judgment, and the sheriff, pursuant to the terms of the writ, levied upon all the stock, fixtures and household furniture and contents of said hotel and apartment house. A complete list of the property of the Majestic Apartment House Company so levied upon, is contained in the catalog issued by Barnes & Lafland, auctioneers.

On December 15, 1913, a writ of fieri facias was issued upon the judgment obtained by Joseph R. Wainwright, above set forth, and the sheriff, by virtue of the said writ, levied upon the same property as was covered by the levy of said C. Herbert Simon.

We are of opinion:

(1) That the lien of the Fidelity Title and Trust Company (of Pittsburgh, Pa.) under and by virtue of the first mortgage bonds owned and held by it, and more particularly under and by virtue of the decree of December 5, 1914, is limited to the realty, and that so far as the fund of $30,046.15 is concerned, it stands in the position of a general creditor;

(2) That so far as the lien of the Security Trust Company (of Camden, N. J.) under and by virtue of the second mortgage is concerned, it is in the position of a general creditor, subject, however, to the priority of the first mortgage. In other words, the first mortgage must be

satisfied before those claiming under the second mortgage can recover any part of the fund in controversy; and

(3) C. Herbert Simon and Joseph R. Wainwright, the execution creditors, are entitled to the amount of their judgments with interest and costs thereon. The balance of the fund is awarded to the Real Estate Trust Company of Philadelphia, trustee, it being the other judgment creditor.

*Error assigned* was the decree of the court.

*Benjamin H. Ludlow,* with him *Humbert B. Powell,* for Fidelity Title and Trust Company, appellant.

*John G. Johnson,* with him *James Wilson Bayard,* for Security Trust Company of Camden, New Jersey, trustee, appellant.

*Walter Biddle Saul,* with him *Thomas B. Harned,* for appellees.

OPINION BY MR. JUSTICE MESTREZAT, July 3, 1915:

The facts are fully set forth in the case stated and summarized in the opinion of the court below. The discussion of the questions involved in the case by the learned judge in his opinion needs but little amplification on these appeals. The fund for distribution is the proceeds of personal property and we agree with the court's conclusion that the execution creditors must be first paid out of it in preference to the mortgage creditors, and that the balance of the fund is applicable to the first mortgage.

The contention that the first mortgage covers the personal property in the hotel as part of the hotel plant and hence realty cannot be sustained. We have carefully examined all the decisions cited by the appellant but they do not support the proposition as applied to the

facts of the present case.   Where the facts of those cases are at all similar to the facts of this case the decision sustains the conclusion of the trial court.   After a very thorough examination of our decisions we do not find even a suggestion in any of them that would warrant us in holding with the appellant that as against execution creditors the furniture, household furnishings, tableware, etc., used in the hotel, are part of the real estate and as such bound by the lien of a mortgage on the premises.   The doctrine of fixtures has not yet been carried to that extent in this State.

The contention that the Act of April 17, 1876, Sec. 36, P. L. 30, 2 Purd. 1847, authorizes a hotel company to mortgage its furniture and other personal property is equally untenable.   This clearly appears from the language of the statute.   The act empowers a hotel company, inter alia, to take and hold "all the buildings, lots of lands, premises and appurtenances necessary to the successful maintenance in carrying on of such business, ......to hold and erect such buildings, fixtures and appurtenances, and procure such furniture and equipments, as may be necessary for the success of its business."   The act then provides that the company may borrow money, and "secure the same by mortgage upon the said lots, buildings and fixtures and appurtenances." It is apparent that the act differentiates "fixtures and appurtenances" from "furniture and equipments." While the act empowers a company to acquire "furniture and equipments" for the hotel, no authority is conferred on the company to mortgage or pledge the "furniture and equipments" to secure the payment of its indebtedness.   The Act of May 21, 1889, P. L. 257, conferred no such authority, and hence the mortgage of 1902 created no lien on the company's personal property.

We are of opinion that the Act of April 22, 1905, P. L. 280, 5 Purd. 5340, does not authorize a mortgage of personalty by a corporation without change of possession of the property, and therefore the Security Trust Com-

pany did not have a lien on the personal property in the hotel of the Majestic Apartment House Company which gave it a preference over the execution creditors in the fund for distribution.    The title to the act is "An act to amend section 1 of the act, entitled 'An act to provide for increasing the capital stock and indebtedness of corporations,' approved the ninth day of February, Anno Domini one thousand nine hundred and one; and authorizing corporations to increase their capital stock and indebtedness, and secure the payment of principal and interest of their indebtedness."    The act must be construed, as suggested in the argument, in the light of the law as it existed at the time of the enactment and in view of the settled policy of the State.    While recent legislation has provided for mortgaging certain species of personal property, chattel mortgages have been generally regarded as inimical to the public policy of the State and void as to execution creditors.    Prior to the act all mortgages of real estate were required to be recorded to give priority of lien, but the general recording acts do not extend to writings concerning personal property: Fitler v. Shotwell, 7 W. & S. 14.    Statutes authorizing a mortgage on lumber, oil and other chattels disclose in clear and specific terms their purpose, and provide for recording the mortgages.    The Act of 1905 is neither specific nor plain in its terms as to what may be mortgaged and makes no provision for recording the mortgage, and if it is to be considered as complete in itself a mortgage of real or personal property or both of such corporation would be entitled to a lien as against other creditors without being recorded.    There being no statutory provision requiring the recording of a mortgage of such personal property, the recording of the instrument would not be notice to any one.    We think it was the legislative intent that the indebtedness of such company should be secured in the usual and established way as provided by existing law by recording a mortgage or deed of trust on real estate and by a pledge on.

personal estate accompanied by possession taken by the pledgee. The language of AGNEW, J., in Roberts' and Pyne's App., 60 Pa. 400, interpreting an act authorizing certain corporations to borrow money is applicable to the present case. He says (p. 403) : "Chattel mortgages and sales which leave the property in possession of the debtor, are against policy and void against execution-creditors. Then what evidence have we in the act itself that it was the intention of the legislature to uproot this ancient and wise policy? Certainly none, but the use of a word of wide meaning, and which might have been readily used in reference to a kind of property in the mind of the penman which was the common subject of mortgages. On the other hand, the omissions of the act tell strongly against the wide meaning asked for it. There is no provision for recording such a mortgage, or for a remedy upon it." We may conclude this branch of the case in the language of the learned trial judge : "This Act of 1905 by its title makes no pretense of changing the law on the subject of chattel mortgages and the rights of creditors, and does not purport to make any change in the policy of the law of Pennsylvania on this subject. The plain meaning of the act is that a corporation is relieved from the limitation heretofore existing upon the amount of the indebtedness as compared to this capital stock, and, second, that a corporation may borrow money upon a mortgage of its real estate, or by a deed of trust, or by a pledge or conveyance of any of its real or personal property. The necessary meaning of the act in view of the words of its title is ,that it must do so in the manner now prescribed by law, to wit, if it is a mortgage of real estate, to be valid as against subsequent purchasers and judgment, that mortgage must be recorded. If, on the other hand, it is to be a pledge of its personal property, to be valid as against creditors the pledge must be made in accordance with the established law, and as the nature of the word implies, the posses-

sion of the personal property must be given to the pledgee."

Our interpretation of the Act of 1905 does not require us to pass upon its constitutionality.

The learned judge of the court below correctly held that the balance for distribution in excess of the claims of the execution creditors was applicable to the first mortgage. He based his conclusion, as he says in his opinion, on the ground that the second mortgage was, in express terms, made subject to the lien of the first mortgage, the holders of the second mortgage bonds having waived any objection which might otherwise have been urged against the validity of the first mortgage bonds. By the case stated it appears that "said second mortgage, by its recitals, as well as by the granting clause thereof, showed that it was to be second in lien, however, to a prior mortgage of one million dollars, dated November 20, 1902."

The fund for distribution is the proceeds of personal property, which was included in both mortgages, but on which neither was a lien as against execution creditors. The pledges were good and enforceable between the mortgagor and mortgagees. When the second mortgage was taken, the mortgagee had notice that the property had been pledged by a first mortgage, and expressly agreed that the latter should have priority over the second mortgage. The manifest intention of the mortgagor and the mortgagee in the second mortgage, therefore, was that the first mortgage bonds should first be paid out of the real as well as the personal property included in the mortgage, a part of which was personalty and its proceeds are now being distributed. The second mortgage bondholders knew that the property had already been pledged to secure an indebtedness of the mortgagor, and accepted the property as a pledge for the debt subject to the prior indebtedness. The court cannot confer on these bondholders rights which they expressly waived. In the language of WILLIAMS, J., in Fidelity Ins. Trust &

Safe Deposit Co. v. West Penn. & Shenango Connecting Railroad Co., 138 Pa. 494, 505; "The judgment of the court below left them in no worse position than that which they voluntarily assumed, and they have no right to ask us to place them in a better one."

Our conclusion is sustained by numerous authorities among which are Seldon's App., 74 Pa. 323; Fidelity Ins. Trust & Safe Deposit Co. v. West Penn. & Shenango Connecting Railroad Co., 138 Pa. 494; 17 Cyc. of Law & Proc. 1168 and cases cited in the notes.

The judgment is affirmed.