## U.S. Bank N.A. v. Hoyt

*Gregory Javardian,* for plaintiff.

*Evan C. Pappas, Michael E. Rowan* and *James W. Hennessey,* for defendants.

FARINA, *P.J.,* August 20, 2008—This appeal to the Superior Court involves the real estate issues of mortgage lien priority and lien divestiture by sheriff's sale. In the order appealed from, I declared the lien of a mortgage held by appellants to have been divested by a sheriff's sale on a simultaneously entered and recorded lien of a

mortgage both of which by their express terms declared themselves to be purchase money mortgages on the same real estate. I so ruled because by statute 41 Pa.C.S. §8141, purchase money mortgages entered upon the same property, recorded at the same time, and which contain no terms as to which is to have priority, are of equal priority with one having no priority over the other.[1] Therefore, a sheriff's sale on one of them divests the other pursuant to the Lien Divestiture Law, 42 Pa.C.S. §8152, which provides that a sheriff's sale on a lien divests all mortgages that are not prior to all other prior liens.

The lien foreclosed upon and the lien divested were created as a part of a somewhat complex real estate transaction. That transaction and the related facts that bring the issue to court follow.

On March 8, 2005, Michael J. Hoyt and Kandi M. Hoyt purchased 140 Ridge Avenue, Ephrata, Pennsylvania (the property) from Donald J. Nelson and Jacqueline B. Nelson. The purchase price of the property was $249,900, all of which was financed by bank loans. At the March 8, 2005 closing, the Hoyts executed two separate purchase money mortgages to Michigan Fidelity Acceptance Corporation in the amounts of $199,920 and $49,980 to secure the purchase money for the prop-

---

1. See also, *Ladner Pa. Real Estate Law,* §23.03(b), Ronald M. Friedman (2006); citing *Pease v. Hoag,* 11 Phila. 549 (1875) and *Klaus v. Majestic Apartment House Company,* 250 Pa. 194, 95 A. 451 (1915), which states that "two . . . mortgages are given simultaneously on the same property and both are recorded within the 10-day limit, although on different dates, neither is a prior to the other. To avoid this effect, if it is intended that one . . . mortgage should be subject to the other, the mortgage intended to be junior in lien should contain what is called a second mortgage clause, expressing such intent."

erty. Both Michigan Fidelity purchase money mortgages contained language stating: "If any of the debt secured by this security instrument is lent to borrower to acquire title to the property, the security instrument shall be a purchase money mortgage." Therefore, the two Michigan Fidelity mortgages are "purchase money mortgages," not ordinary mortgages.

Both Michigan Fidelity purchase money mortgages were recorded on March 9, 2005, simultaneously at 4:18 p.m. in the office of the Recorder of Deeds of Lancaster County.

At the March 8, 2005 closing, the Hoyts also executed another mortgage for the benefit of the Nelsons to secure the amount of $77,597 (Nelson mortgage). The Nelson mortgage was also recorded on March 9, 2005, at 4:18 p.m. in the office of the Recorder of Deeds of Lancaster County. The Nelson mortgage contains express language referring to the two Michigan Fidelity purchase money mortgages and subordinates itself to those purchase money mortgages.

However, *neither* of the two Michigan Fidelity purchase money mortgages ($199,920 and $49,980) contained a subordination clause[2] nor any reference that either loan was intended to be a first or second mortgage. The Michigan Fidelity purchase money mortgages do not refer, in any way, to the relative lien priority that was to exist between them and make no reference in either Michigan Fidelity mortgage document that the other

---

2. A "subordination clause" is a covenant in a junior mortgage enabling the first lien to maintain its priority in case of renewal or refinancing. Black's Law Dictionary, 1440 (Seventh ed. 1999).

Michigan Fidelity mortgage even existed. Thus, based on the language contained in the Michigan Fidelity mortgages, no record notice was given to potential title searchers or subsequent purchasers about their relative lien priority.

Soon after the Michigan Fidelity purchase money mortgages were created, they were purchased by other mortgage companies who assumed all of the rights and remedies conveyed by them. On June 28, 2005, U.S. Bank became the mortgagee by assignment of the purchase money mortgage originally recorded in favor of Michigan Fidelity in the amount of $199,920 (the U.S. Bank mortgage).[3] On December 15, 2006, EMC Mortgage Corporation, attorney-in-fact for Citibank N.A., as trustee for certificate holders of Saco I Inc., mortgage pass-through certificates; series 2005-5, became the mortgagee by assignment of the March 8, 2005 purchase money mortgage originally recorded in favor of Michigan Fidelity in the amount of $49,980 (EMC's mortgage).

At some point after the Hoyts executed the two Michigan Fidelity purchase money mortgages and the Nelson mortgage, their mortgage loans went into default. On September 1, 2006, the Law Office of Gregory Javardian filed a complaint in mortgage foreclosure on behalf of EMC seeking to foreclose on EMC's mortgage. As a result, a sheriff's sale was held on April 25, 2007, where the property was sold to Central Penn Properties for $38,500. All of the proceeds of this sheriff's sale were

---

3. Thereafter, on April 13, 2007, WCRSI, LLL became the mortgagee by assignment of the U.S. Bank Mortgage. (Stip. exhibit 3-5.) The underlying action is WCRSI's attempt to foreclose upon the U.S. Bank mortgage and sell the property at sheriff's sale.

distributed to EMC to satisfy its interest. Soon after purchasing the property at the April 25, 2007 sheriff's sale, Central Penn Properties transferred its interest in the property to Parula Properties LLC.

On June 15, 2007, Parula sold the property to intervenors Grzegorz Marzec and Lorena Marzec for $325,000. Pursuant to this June 15, 2007 sale of the property, intervenor AmTrust Bank N.A.[4] loaned the Marzecs all of the purchase money for their purchase of the property. The Marzecs were not present at the sheriff's sale and, therefore, had no notice that U.S. Bank considered their mortgage to still be a lien on the property. Furthermore, when purchasing the property, the Marzecs were not made aware by Parula that the property was allegedly subject to a mortgage.

On September 27, 2006, shortly after EMC's mortgage foreclosure was filed, the Law Office of Gregory Javardian filed a complaint in mortgage foreclosure on behalf of U.S. Bank seeking to foreclose on the U.S. Bank mortgage. As a result of this mortgage foreclosure action having been filed, an initial sheriff's sale was scheduled to occur on June 27, 2007. This sheriff's sale was most recently scheduled for July 30, 2008, but was stayed by order of court dated June 26, 2008.

---

4. There are three intervenors/appellees in this matter: Grzegorz Marzec, Lorena Marzec and AmTrust Bank. Although the Marzecs are a married couple and AmTrust Bank is a Federal Savings Bank, the interests of all intervenors are aligned for purposes of the issue before this court and the interests of all three intervenors are represented within this brief.

Appellant in its 1925 concise statement of matters complained of on appeal does not directly challenge my construction of the Michigan Fidelity purchase money mortgages and operation of the lien divestiture law. Appellant's allegation of errors contends the court should have considered extrinsic evidence outside the four corners of the mortgages and determined that the $199,920 purchase money mortgage now held by it had priority over the $49,980 foreclosed-upon Michigan Fidelity purchase money mortgage acquired by EMC and was, therefore, not divested by the sheriff's sale. So finding would result in appellant proceeding with the now stayed sheriff's sale on its $199,920 mortgage against appellees Marzecs who were the ultimate purchasers of the property,[5] then being held responsible for payment of the appellant's mortgage which they believed was divested.

I will sequentially address each of the five issues raised by appellant and complained of on appeal. They are:

(I) "Whether the court of common pleas erred in failing to look to the intent of the original purchase money mortgagees and borrower to establish the priority of two purchase money mortgages where the purchase money mortgage instruments themselves are silent as to priority."

If this were a contest between only the two holders of the purchase money mortgage who sought a declaration

---

5. The purchaser at the sheriff's sale on the $49,980 purchase money mortgage which I ruled divested the appellant's mortgage in turn sold the property which was ultimately acquired by appellee Marzecs who financed this purchase with a $325,000 mortgage.

of lien priority between them, appellant might have a point. However, here appellants bring their claim against appellees who are strangers to the real estate transaction that created the purchase money mortgages and, as I see it, have a right to rely upon the terms of the recorded mortgage record. Those mortgages made, entered and recorded simultaneously, do not provide that one has priority over the other. Under these circumstances, extrinsic evidence of lien priority intent cannot affect the ultimate purchaser, *i.e.,* appellee, who was not a party to that transaction.

(II) "Whether the court of common pleas failed to consider that if two purchase money mortgages are silent as to priority but the intent of the purchase money mortgagees and borrower was that one of the mortgages was to have priority over the other and, at the sheriff's sale of the property pursuant to the foreclosure of the mortgage that was intended to be subordinate, the sheriff announces that the sheriff's sale is subject to a mortgage, the purchaser of the property at the sheriff's sale (who is put on actual notice) is estopped from asserting that the sheriff's sale discharged both purchase money mortgages."

The substance of appellant's second issue is not altogether clear, but it appears that appellant attempts, for the first time, to raise estoppel as a basis for its assertion that the prior sheriff's sale did not act to divest both mortgages. Appellant seems to claim that the purchaser of the foreclosed property at the sheriff's sale who is put on actual notice by announcement that the sale is "subject to a mortgage" is estopped from asserting that the sheriff's sale discharged both purchase money mortgages.

The entity that purchased this property at the sheriff's sale is Central Penn who is not a party to this action. The Marzecs, who purchased the property from Parula, who acquired it from Central Penn, were not parties to the sheriff's sale and AmTrust Bank, who financed the purchase, did not lend money to the Marzecs until well after the sheriff's sale had concluded. Subsequent transfers of the property cannot be estopped based upon an oral announcement unsupported by the recorded record.

(III) "Whether the court of common pleas should have ruled that at a sheriff's sale where the foreclosing mortgagee and the purchaser at the sheriff's sale each had notice and understand[ing] from the sheriff's instructions and procedures that if (i) the sale of a property is made expressly subject to a prior mortgage (through communication between the foreclosing mortgagee and purchaser prior to the sale, advertisement of the sale, and an announcement at the sale); and (ii) preservation of the prior mortgage on the property is a condition of sale, then once the purchaser's offer to purchase the property is accepted, (a) the purchaser takes the property subject to the conditions set forth in the notice of sale, (b) the sale of the property will not discharge the prior mortgage, and (c) the purchaser (and its successors in title) takes the property subject to the prior mortgage."

Here, at the sheriff's sale of the smaller of the $49,980 Michigan Fidelity purchase money mortgages, said sale was noticed to be "subject to mortgage," without indicating which Michigan Fidelity mortgage the sale was subject to. This notice was imprecise and ineffective to put the immediate purchaser or subsequent purchasers on notice of what mortgage was still to be a lien on 140

Ridge Avenue. As was stipulated by the parties, the Nelsons also placed a mortgage on the property on the same date as the Michigan Fidelity purchase money mortgages were executed. Furthermore, all three mortgages were recorded on the same date and simultaneously. Finally, the sheriff's deed, as written and recorded, fails to identify either of the Michigan Fidelity purchase money mortgages and is insufficient to put any subsequent purchasers on notice of such mortgages.

(IV) "Whether the court of common pleas erred in failing to determine that a sheriff's sale is final disposition of a property where a purchaser of the property at a sheriff's sale had actual notice that the property was being sold 'subject to mortgage' if, following the sheriff's sale: (i) the purchaser fails to file a timely written exception to the sheriff's distribution of proceeds pursuant to Rule 313(d) of the Pennsylvania Rules of Civil Procedure; and (ii) the sheriff executes and acknowledges before a prothonotary the deed poll to the subject property indicating that the property was sold 'subject to mortgage.'"

In support of this issue, appellant cites several cases that outline the required procedure for filing exceptions to the distributions at a sheriff's sale. Appellees have no objection to the distribution of the proceeds of the sheriff's sale, and had no obligation to raise objections. To the contrary, U.S. Bank had every obligation to raise any objections to the distribution of proceeds or to raise their lien priority within the required time limits. Quite simply, the post-sale procedures outlined by appellant are not applicable in this case.

Also, the purchaser here, Central Penn Properties had no incentive to raise any exceptions to the sheriff's sale. AmTrust Bank, whose interest could be substantially affected by any post sheriff's sale determinations that could have been raised, had no present interest in the property and counsel have not raised any exceptions to such sale. Appellant's position is not framed as one based in the post-procedure sheriff's sale remedies, but rather is based in equitable principles and the recording statutes.

Furthermore, the sheriff's deed that was issued following the sheriff's sale, granting the property to Parula Properties LLC, was the only recorded document that could have placed AmTrust and the Marzecs on notice of the alleged continuing interest of U.S. Bank in this mortgage. Such sheriff's deed was insufficient to put any subsequent purchasers on notice that the property was subject to the U.S. Bank mortgage.

(V) "Whether the court of common pleas failed to consider that where: (i) a property is sold at sheriff's sale, (ii) the sheriff executes and acknowledges before the prothonotary a deed poll to the subject property conveying the property 'subject to mortgage,' and (iii) the deed poll is recorded in the recorder of deeds office and, therefore, made part of the public record, any successor in interest to the property subsequent to the recording of the deed poll has constructive notice of the mortgage lien against the property, is not a bona fide purchaser, and takes the property subject to the existing mortgage."

The declaration at the sale that the sale was "subject to a mortgage" and the sheriff's deed merely stating the same was inadequate to put any purchaser on notice of

any priority of appellant's lien. This is especially so where there were two other mortgages on record, the other Michigan Fidelity mortgage and the Nelson mortgage.

The mere declaration that the sale was subject to a mortgage without more was insufficient to overcome the recorded facts of the two Michigan Fidelity mortgages and the clear law applicable to those facts upon which a purchaser, at the sheriff's sale and appellee as a subsequent purchaser, were entitled to rely. Those clear facts are that the Michigan Fidelity mortgages were purchase money mortgages simultaneously recorded without any statement of priority and therefore of equal priority, and that under the Lien Divestiture Law, a sheriff's sale on one divested the other and the divested lien holder's remedy was to bid to protect itself at the sale and to look to the proceeds of sale for satisfaction of the mortgage.

## CONCLUSION

My order of June 16, 2008, appealed from was legally correct and should be affirmed.